**Everton Paul LAYNE, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 01–87–00347–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

June 9, 1988.

Audley H. Heath, Stanley Schneider, Houston, for appellant.

John B. Holmes, Dist. Atty., Harris County, for appellee.

Before WARREN, DUGGAN and LEVY, JJ.

## OPINION

LEVY, Justice.

Everton Paul Layne was indicted for possession of marihuana in a quantity of more than five pounds but less than 50 pounds. A jury found appellant guilty of the offense as charged in the indictment and assessed punishment at 15 years confinement in the TDC. On appeal, appellant asserts 14 points of error.

The record reflects that appellant entered Terminal C at Houston's Intercontinental Airport and took a place in line at the Continental Airlines ticket counter, intending to purchase a ticket to New York City. There were many people ahead of him and by approximately five minutes before the flight's scheduled departure, he had progressed only about half-way up the line. While standing in line, appellant was observed by Houston Police undercover narcotics Officer Dan D. Furstenfeld. Ap-

pellant was a black male who appeared to be nervous and was noticeably perspiring even though the day was cool. He spoke with a Jamaican or "island" accent. While standing in the line, he continued to hold all three of his suitcases, never placing any of them on the ground. Five minutes before the Continental flight was to depart, appellant apparently realized he would not be able to make the flight, left the line, and headed toward the escalator.

Officer Furstenfeld then approached appellant and asked if he could speak to him. Appellant assented, and Furstenfeld identified himself as a police officer. Officer R.B. Stewart, also of the Houston Police Department, then approached the appellant and identified himself as a police officer as well. It is undisputed that appellant was told that he was not under arrest and was free to go. He was informed that the officers were investigating narcotics trafficking and that they would like to look in his suitcase. Again, appellant was told that he did not have to allow them to search his luggage and that he was free to leave if he so desired.

Appellant consented to the search and handed the keys to his suitcases to Officer Stewart. When the first suitcase was opened, it was found to contain a large, carefully wrapped bundle that gave off a strong odor of marihuana. Appellant was then placed under arrest and escorted downstairs to the first aid room, where he received *Miranda* warnings. A further search of his luggage revealed another large similarly wrapped bundle. Both bundles were then cut open and were found to contain marihuana.

Appellant's first nine points of error will be considered together.

In points of error one through three, appellant urges that the trial court erred in overruling his motion to suppress the marihuana seized from him because it was the fruit of his illegal detention by Houston Police officers in violation of the Fourth Amendment to the United States Constitution, art. 1, § 9 of the Texas Constitution, and art. 38.23 of the Texas Code of Criminal Procedure.

In points of error four, five, and six, appellant asserts that the trial court erred in overruling his objection to the admissibility of the search of his suitcase because the consent was involuntary, in that it stemmed from his illegal arrest and detention in violation of the Fourth Amendment of the United States Constitution, art. 1, § 9 of the Texas Constitution, and art. 38.-23 of the Texas Code of Criminal Procedure.

In points of error seven through nine, appellant argues that the trial court erred in overruling appellant's objection to the seizure of his keys due to his illegal detention by Houston Police officers in violation of the Fourth Amendment of the United States Constitution, art. 1, sec. 9 of the Texas Constitution, and art. 38.23 of the Texas Code of Criminal Procedure.

The Fourth Amendment to the United States Constitution requires that searches and seizures be grounded upon "objective justification" that governs all seizures of the person, including those seizures that involve only a brief detention falling short of traditional arrest. *United States v. Mendenhall*, 446 U.S. 544, 551, 100 S.Ct. 1870, 1875, 64 L.Ed.2d 497 (1980). Art. 1, § 9 of the Texas Constitution provides that:

> The people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation.

Art. 38.23 of the Code of Criminal Procedure similarly provides that:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

However, not every encounter between a police officer and a citizen is an intrusion requiring the State to provide an objective justification. *Mendenhall*, 446

U.S. at 553, 100 S.Ct. at 1876. There is no constitutional restraint to prevent a policeman from addressing questions to anyone on the streets, although in ordinary circumstances the person so addressed has the correlative right to ignore his interrogator and walk away. *Id.* Not every personal transaction between a policeman and an individual, therefore, amounts to "seizure" of the person. A "seizure" occurs only when an officer, by means of physical force or by the show of authority, has in some way restrained the liberty of a person. *Id.*

■ It was quite constitutional and permissible for Officers Stewart and Furstenfeld to approach appellant and ask to speak to him. At that point, appellant could have declined or walked away. *Daniels v. State,* 718 S.W.2d 702, 705–06 (Tex.Crim. App.1986). The issue is, then, at what point, if any, was appellant "detained" for purposes of the Constitutions of the United States and Texas, and the laws of Texas? In determining whether a detention by the State has occurred, the test is whether, from the detainee's point of view, there has been such a display of authority that "a reasonable person would have believed he was not free to leave," thus suggesting the propriety of a peaceful submission to authority. *Mendenhall,* 446 U.S. at 554, 100 S.Ct. at 1877; *Daniels,* 718 S.W.2d at 706.

■ Officer Furstenfeld testified that he informed appellant that he was not under arrest, that he was free to leave, and that he did not have to talk to the officers or to consent to the officers' search of his suitcase. Appellant indicated that he understood that he was free to leave and did not have to consent to the search. The evidence shows that the officers were dressed casually in plain clothes, that their weapons were never visible or displayed, that they never touched appellant, that they never had or retained possession of his driver's license, and that they spoke to appellant in a calm conversational tone of voice. He was not surrounded by the officers and at all times had a path of departure open to him in a public area of the airport. There is no evidence of police threats, coercion, or force. The officers did not threaten to hold the luggage for a "dog sniff" for contraband, nor did they intimate in any way that they could and would procure a search warrant. Neither is there any evidence that any promises were made to appellant by the policemen to encourage his cooperation and consent.

We conclude that no illegal detention of appellant occurred.

■ Turning now to the issue of appellant's consent to the search of his suitcase and the seizure of the keys to the suitcase, we observe that one of the specifically established exceptions to the rule requiring both probable cause and a warrant is a search conducted pursuant to consent. *Kolb v. State,* 532 S.W.2d 87, 89 (Tex.Crim. App.1976). The protection guaranteed by the Fourth Amendment may be waived by an individual consenting to a search. *Id.* Before consent can be effective, however, the prosecution must prove by clear and convincing evidence that the consent was given freely and voluntarily, *Rumbaugh v. State,* 629 S.W.2d 747, 751 (Tex.Crim.App. 1982), and was not merely a peaceful but involuntary submission to a display of authority.

■ At the suppression hearing, Officer Furstenfeld testified that appellant was told that he did not have to consent to the search of his luggage, and that he acknowledged that he fully understood that he could refuse such a search. The record reflects that instead of refusing, appellant responded by saying, "Sure. Go ahead and look in them," and then pulled the keys out of his pocket and handed them to Officer Stewart.

Officer Stewart testified that, "[w]hen he gave us permission to look at his bag, I asked him for the key to the lock."

Based on the evidence presented, there is no support for appellant's position that the stop amounted to an illegal detention or arrest, nor is there any evidence that the search of the suitcase was not fully and voluntarily consented to by appellant. There is no evidence indicating that appellant's keys were seized. Rather, the evidence indicates that the keys were volun-

tarily presented to Officer Stewart, further evidencing appellant's consent to the search of his luggage.

Points of error one through nine are overruled.

Appellant asserts in points of error 10 through 13 that the trial court erred in denying his objections to the State's jury argument at the punishment hearing.

In point of error 10, appellant complains of the following jury argument:

> You know that the marijuana in this case, 31.2 pounds, is capable of making between 50 and 70,000 marijuana cigarettes. And do you think that Everton Layne cared for one minute where that that dope would end up?

It is well settled in Texas that the approved general areas of jury argument include: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Todd v. State*, 598 S.W.2d 286, 296–97 (Tex. Crim.App.1980).

■ Appellant objected that the argument was outside the record. However, a review of the record shows that the jury heard testimony by K.K. Alexander, a chemist for the City of Houston, that anywhere from 50,000 to 70,000 cigarettes could be made from 31.2 pounds of marihuana. Therefore, the State's jury argument was not outside the record and included both a summation of the evidence and a reasonable deduction from the evidence.

Appellant's point of error 10 is overruled.

In points of error 11 through 13, appellant complains of the following jury arguments:

> 1) And I hope that we haven't become a society that is so concerned with money that we don't care what people do to get it. I hope that that is not the state of affairs in this community, that we turn our back and say, well, it doesn't make any difference how somebody get it or what they will do to get it. I hope it makes a difference to each and every one of you. I hope it makes a difference and that you think about where the product

> that Everton Layne had in his possession would end up, because there comes a time, ladies and gentlemen, when the rights of the majority to live in a community that is drug free and to be free from those that profit from the misery that drugs cause users and their families—
> 2) And each one of you has probably sat around and talked to your friends and your neighbors and you've probably said, I wish they would do something. I wish they would do something about drugs in our community. I wish they would do something to stop it, to keep it from our children, from our loved ones. Why? Why? Why can't they stop the flow of narcotics into this community? Why?
> 3) And don't you know that they will be listening? And don't you know that if it stops just one person from bringing drugs into this community, just one person, then maybe you will have stopped a marijuana cigarette or some kind of other drug from reaching the children in this community?

■ The appellant objected to the "generalization and the use of the word drugs in that manner" in the first argument. Further, the appellant maintained that the first argument was outside the record because it was an attempt by the State "to infer the use of other drugs by other individuals with this matter." The appellant objected to "the generalization of the use of the word 'narcotics'" in the second argument, since there had been testimony by the expert witness that marihuana is not a narcotic. The appellant's objection to the third argument was again "about some other kind of drug." The appellant also objected to the third argument as being outside the record.

Appellant urges for the first time on appeal that the prosecutor's jury argument constituted a gross attempt to punish appellant for "drug dealing" and society's problem with drugs rather than being in possession of narcotics. Appellant also objects that in each of the complained of arguments the prosecutor either mentioned drug dealing or children using drugs. He complains that the argument was improper

because no evidence was presented by the State showing that the appellant was a drug dealer, or concerning the manner in which children or young people acquired drugs, or that marihuana was a narcotic.

 However, appellant's objections on appeal do not comport with his objection at trial. Appellant has thereby failed to preserve any error for review by this Court. Even if appellant had properly preserved his grounds of error, the complained of jury arguments fall within the approved scope of proper pleas for law enforcement and reasonable deductions from the evidence. *Todd v. State*, 598 S.W.2d at 296–97.

Appellant's points of error 11 through 13 are overruled.

 In his 14th point of error, appellant contends that the trial court erred in denying appellant's requested jury charge regarding the alleged illegally seized evidence pursuant to Tex.Code Crim.P.Ann. art. 38.23 (Vernon 1979), which provides that where the evidence raises a fact issue, the jury must be instructed that if it believes or has reasonable doubt that the evidence was illegally obtained, it must disregard the evidence.

Appellant contends that the testimony of Officers Furstenfeld and Stewart conflicted, giving rise to a dispute of facts entitling him to the requested instruction. *Morr v. State*, 631 S.W.2d 517 (Tex.Crim. App.1982). However, where no disputed fact issue is raised by the evidence, the trial court acts properly in refusing a request to charge the jury pursuant to art. 38.23. *Murphy v. State*, 640 S.W.2d 297, 299 (Tex.Crim.App.1982).

Appellant asserts that Officer Furstenfeld made no mention in his testimony of a "dog sniffing the luggage," and that Furstenfeld testified that appellant voluntarily handed the keys to the suitcase over to Stewart. Appellant urges that Officer Stewart, on the other hand, testified that Furstenfeld told appellant that if he did not consent to the search, they would get a dog to sniff the luggage, and that he had to ask appellant for the keys. To the contrary,

the record reflects that Stewart testified that, if appellant had wanted to leave, he *would have* requested that appellant allow a dog to sniff his baggage but that in fact he did not make that request or discuss a dog sniffing the appellant's baggage. As previously stated, there was no evidence at all that the officers made any mention of a sniffing dog to appellant. Also, as previously discussed, it was undisputed that appellant first consented to the search and only after that did Officer Stewart ask him for the keys. No conflict existed, therefore, between the two officers' testimony, and appellant was not entitled to the requested instruction.

Appellant's 14th point of error is overruled.

The judgment of the trial court is affirmed.