**The STATE of Texas, Appellant,**

v.

**Scott Cloud GILLIAM, Appellee.**

**No. C14–91–00351–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

May 28, 1992.

Terry Breen, Anahuac, for appellant.

Joseph Salhab, Houston, for appellee.

Before ROBERTSON, SEARS and DRAUGHN, JJ.

## OPINION

DRAUGHN, Justice.

This is an appeal from the trial court's order granting appellee's motion to suppress evidence in a prosecution for the felony offenses of failure to pay taxes on marihuana and possession of marihuana. The State contends the trial court erred in ruling that the marihuana seized from appellee's truck was the result of an unlawful detention, search and seizure in violation of the Fourth Amendment of the U.S. Constitution and Article I, Section 9 of the Texas Constitution. We affirm.

The evidence shows that Chambers County Deputy Sheriff, Doug Yeager, and his partner, Deputy Mike Wheat, were in a marked patrol car on January 26, 1990, traveling west on the north side of Interstate 10 in Chambers County. At approximately 1:47 a.m., Wheat informed Yeager, the driver, that a small light colored pick-

up truck was parked on the west side of the Exxon Little Pair convenience store-gas station which was closed for business for the night. The store is located in an isolated area on the south service road on the east-bound side of Interstate 10 and according to Yeager, the truck's lights were off and no other vehicles were around. Its parking area was illuminated only by medium lighting from its customary closing time between 11 p.m. and 12 midnight. Wheat observed appellee walking toward the truck, on which the driver's side door was open. As Yeager was turning the patrol car around to investigate, the truck left the parking lot and proceeded eastbound on the service road. Yeager pursued the truck and appellee pulled over to the side when Yeager turned on his patrol car's emergency lights. As appellee exited the truck, Yeager requested his driver's license and insurance card. When Yeager asked appellee why he parked earlier at the side of the closed store, appellee responded that he had stopped to relieve himself. Since appellee's insurance card was expired, Yeager radioed in the appellee's driver's license to the dispatcher and discovered it, too, had expired. Appellee was arrested for driving a motor vehicle on a public roadway with an expired license, and the deputies called a wrecker to tow the truck. They began an inventory of the truck contents. Wheat informed Yeager he smelled marihuana in a locked toolbox in the truck. On opening the toolbox, they found marihuana and seized it as evidence.

At the suppression hearing, Yeager testified he had been a Texas peace officer for 12 years. For nine of those years, he had regularly patrolled this area, and it was not common to find vehicles parked at that store after hours. Throughout his police career he had caught numerous burglars in the process of breaking into stores when they parked their vehicles along the sides of closed businesses at night.

The State argues in its sole point of error that the trial court erred in finding the police had illegally stopped the defendant and seized the marihuana. The State contends that appellee was stopped as the result of a legal investigative stop and that

the deputies' actions were the only reasonable steps to take under these circumstances.

■ The trial court's findings in a pretrial hearing will not be disturbed absent an abuse of discretion. *Freeman v. State*, 723 S.W.2d 727, 729 (Tex.Crim.App.1986). In reviewing a ruling on a motion to suppress evidence obtained in a search, we must view the evidence in a light most favorable to the trial court's ruling. *Bodin v. State*, 782 S.W.2d 258, 259 (Tex.App.— Houston [14th Dist.] 1989), *rev'd on other grounds*, 807 S.W.2d 313 (Tex.Crim.App. 1991).

■ A police officer may briefly stop a suspicious individual in order to determine his identity or to maintain his status quo temporarily while obtaining more information. *Gearing v. State*, 685 S.W.2d 326, 327 (Tex.Crim.App.1985). Circumstances short of probable cause for an arrest may justify temporary detention for the purpose of investigation since it is considered to be a lesser intrusion upon the personal security of the individual. An occupant of an automobile is just as subject to a brief detention as is a pedestrian. *Id.* Whereas more than an inarticulate hunch is necessary, the Fourth Amendment protection against unreasonable searches and seizures does not preclude a police officer, in appropriate circumstances, from stopping and detaining an individual "to investigate suspected criminal behavior even though there is not probable cause to make an arrest." *Hernandez v. State*, 523 S.W.2d 410, 411 (Tex.Crim.App.1975) (citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). To determine whether an officer is justified in making such an intrusion upon the freedom of the person stopped and detained, the court must find that the officer, in light of his experience and general knowledge, had specific and articulable facts which taken together with rational inferences from those facts would reasonably warrant the investigative stop. *Hernandez*, 523 S.W.2d at 411. As stated by the court of criminal appeals:

There must be a reasonable suspicion by the officer that some activity out of the ordinary is occurring or had occurred, some suggestion to connect the detained person with the unusual activity, and some indication that the activity is related to a crime. Where the events are as consistent with innocent activity as with criminal activity, a detention based on those events is unlawful.

*Johnson v. State*, 658 S.W.2d 623, 626 (Tex. Crim.App.1983); also, see *Crockett v. State*, 803 S.W.2d 308 (Tex.Crim.App.1991).

Appellant claims the trial court erroneously gave great weight in its suppression ruling to the holding in *Hoag v. State*, 728 S.W.2d 375 (Tex.Crim.App.1987). Appellant contends *Hoag* is not completely on point and a careful reading actually supports its case that the deputies were justified to briefly detain appellee because of a reasonable suspicion that a crime had been committed. Appellant argues the search in *Hoag* was made pursuant to an illegal arrest, while the stop here was strictly a legal investigative stop.

In *Hoag*, witnesses to a burglary gave the police a general description of the burglar and a description and license number of the burglar's car. Because these witnesses were unable to positively identify Hoag, undercover police officers placed him under surveillance. They observed him park his car behind an apartment complex and walk two blocks to a nearby neighborhood. He "suspiciously" approached a house, knocked on the door, and then walked into the backyard. In a few minutes, he returned and walked back to his car. Two officers checked the house for burglary signs and found none. Later, he approached a different house, looked around, and checked the garage door to see if it would open. He then drove to another apartment complex, went inside, and then returned to his car without carrying anything in his hands. At the third apartment complex, appellant went inside and came out thirty minutes later carrying a newspaper and a canned drink. He opened his car door, took something out of his pocket, and placed it on the floor of the driver's side. Officers again, unsuccessfully, looked for evidence that an apartment had been burglarized. A few blocks away from the apartment complex, other officers pulled Hoag over and ordered him out at gunpoint. They then read him his *Miranda* warnings. While retrieving a diving knife sticking out from under the driver's seat, one of the officers noticed a large lump under the floormat and flipped it back finding jewelry and coins. The Court of Criminal Appeals ruled there was insufficient probable cause to support a full arrest and the subsequent search of appellant's car. However, the court concluded the officers would have been justified in temporarily detaining appellant in view of the collective knowledge of the officers and their justified surveillance of the appellant, but they went too far and made an impermissible warrantless arrest. The officers previously suspected that appellant had been involved in a burglary committed two days before his arrest. Moreover, while under surveillance, appellant confirmed no one was home at two different houses and then went into the backyard of one house and tried to open the garage door of the other house.

Although appellant is correct that the present case deals merely with a temporary stop, the deputies did not have sufficient articulable facts as contrasted with *Hoag* to even warrant a temporary detainment of appellant on the grounds that a crime had been committed. Here, the officers had no prior information of any burglaries at the Exxon Little Pair or in the vicinity. Yeager testified he had no information of a crime in progress at the time nor did he observe appellee engaging in any criminal activity. Appellee was not carrying anything as he entered his truck. The fact that appellee was walking toward his truck and its front door was open is not evidence of a crime and is consistent with innocent activity. There is no evidence he attempted to enter the station or that a door was forced open. Appellee drove away from the parking lot in a normal, law-abiding fashion and did not rush from the scene. He pulled over when the deputies put on their emergency lights. The evi-

dence does not show that appellee's truck contained any burglary tools or weapons.

Appellant also complains that appellee's reliance during the suppression hearing on *Johnson v. State,* 658 S.W.2d 623 (Tex. Crim.App.1983), was improper because that case is distinguishable. In *Johnson,* a detective saw the appellant's pickup, loaded with furniture, backed up to a closed McDonald's Restaurant at approximately 5:00 a.m. Appellant was seated in the driver's seat and the area was well-lighted. The detective approached appellant, asked for his driver's license, and radioed the license plate number to his dispatcher to see if the truck was stolen. After determining the furniture was not from McDonald's, the detective asked appellant his purpose for being there and shined his flashlight in the truck's cab. The detective noticed the ignition switch and a screwdriver on the floorboards and fresh pry marks on the steering column. Leaning inside the truck to retrieve the items, the detective found a plastic package with two hypodermic syringes sticking out of the visor. Appellant was arrested and the lab identified the powder as methamphetamine. The court found that the syringes and powder were inadmissible as evidence because the detective did not articulate sufficient facts to justify the initial detention of appellant. The court noted the only factors possibly out of the ordinary were the early morning hours, the presence of furniture, and the appellant's truck parked next to a closed business. Further, these events were as consistent with innocent activity as they were with criminal activity.

■ Appellant alleges that the instant case differs from *Johnson* in several important ways. Yeager testified the Exxon Little Pair was not well lit, appellant parked in the darkest area, and he was seen outside his truck on the grounds of the business. Moreover, it is less likely that appellant was waiting for the convenience store to open up at 1:47 a.m. than at a fast-food restaurant at 5 a.m. Lastly, the deputies did not have time to check out whether the convenience store was burglarized because appellee was already driving away. Yet, Yeager testified that the parking lot's lighting was medium brightness rather than total darkness. Although appellee was observed outside his truck, this could be totally consistent with his allegation that he had stopped to relieve himself. Yeager did not recall whether the Exxon sign which would have been the only visible part of the premise from the highway was on or off. Thus, appellee may not have known that the store was closed and could have exited the freeway to buy a cold drink, pump gas, or to find a restroom at the convenience store. A truck parked in a closed convenience store parking lot in the early morning hours is as consistent with innocent activity as criminal activity. We are constrained to conclude under *Hernandez, Johnson, Hoag* and their more recent progeny that there must be more articulated facts to indicate that the activity is related to a crime to justify this as a legal stop. We are not inferring that officers should not investigate dubious circumstances involving individuals at closed business premises late at night. We are simply saying that to detain them, the constitution requires more than was present here. In granting appellee's motion to suppress, the trial court stressed that although Yeager was a believable and trustworthy witness, he did not testify or articulate any reasonable suspicions of criminal activity or conduct to justify a lawful detention of the appellee. We agree. The court noted that the deputies should have checked the premises for burglary evidence as did the officers in *Hoag* to confirm their hunch that appellee was in the process of committing a crime. Yeager did check the license plate with the dispatcher while he was following appellee and the registration tags had not expired. If the deputies had received any prior information about any possible burglaries in the vicinity, observed some specific indicia of criminal intent, or if appellee had driven away at a rapid rate of speed or erratically, we would have reached a different conclusion. Applying the standards in *Hoag* and *Johnson,* we find that the stop of appellee's truck, under these limited circumstances, was a constitutionally impermissible detention, and the trial court did

not abuse its discretion in suppressing the marihuana subsequently discovered as a result of the ensuing search. Appellant's sole point of error is overruled.

We affirm the order of the trial court.

ROBERTSON, Justice.

Believing that the trial court and the majority opinion requires too much evidence to justify an investigative detention, I respectfully dissent.

The salient facts are simple. Minutes before 2 a.m. on the day in question, two Chambers County deputy sheriffs were on patrol on Interstate Highway 10 near Winnie. They observed a pick-up truck parked on the darkened side of a rural gas station/store on the opposite side of the freeway. The truck was parked on the side of the building opposite to where parking spaces were provided and, at that time, providing some minimal light. The lights on the pick-up were turned off and the driver's side door was open. Since "it was suspicious to me that it was parked on the west side of the building at this time of the morning when the place of business was closed," Deputy Yeager stated they decided to investigate and as they maneuvered their patrol car so they could approach the station/store, (they were on the other side of the divided I–10) the pick-up left the station and the deputies pursued and stopped it within a short distance. Appellant was alone in the truck. Deputy Yeager asked for and received appellant's driver's license and insurance card. The insurance card appellant presented showed his insurance "was expired." The officer returned to his patrol car and checked out appellant's driver's license, and it "came back expired." Appellant was then placed under arrest and, since there was no one to whom the pick-up could be released, the officer called for a wrecker and, consistent with department policy, the officers began an inventory of the contents of the pick-up. After they inventoried the cab and were about to begin an inventory of the rear of the truck, Deputy Wheat announced he smelled marijuana coming from a large tool box in the bed of the truck. The keys to the box were secured from appellant and marijuana was recovered from the tool box.

At the conclusion of the motion to suppress evidence hearing, the trial judge stated: "I feel the officer testified truthfully about the return on the expired driver's license, return on the insurance, that certainly that arrest would be lawful in the Court's mind, taking this point in time that the procedure used to inventory would be a lawful search and seizure...." Further on, the trial judge stated "I think that one thing officers can do if they see something suspicions like that, the first thing is to check the premises to see if there had been a burglary; otherwise, the activity of Mr. Gilliam in this case is just as consistent with innocent activity as it is with criminal." Finally, in granting the motion to suppress the trial judge stated, "I have a further finding that from the testimony of Deputy Yeager that nothing suggests that the defendant was engaged in any criminal activity nor was Deputy Yeager able to testify and/or articulate any suspicions from the Court's recollection of the evidence that would indicate a reasonable suspicion of criminal conduct or activity to justify the stop...."

While the majority opinion correctly points out that the court's findings in a pretrial hearing will not be disturbed absent an abuse of discretion and that we must view the evidence in the light most favorable to the trial court's ruling, by the above-quoted findings, the trial judge "painted himself into a corner" such that the rules announced by the majority do not control the disposition of this case.

It seems clear that the trial judge determined that if the initial stop was valid, then the search was valid because the search followed a legal *arrest* for driving both without a valid operator's license and proof of insurance. However, the trial judge invalidated the initial stop because the deputy was unable to articulate any "reasonable suspicion of criminal conduct or activity."

Whether the officers were justified in deciding to make an investigatory stop of appellant did not require probable cause to believe that an offense had been commit-

ted. The only question before the trial court was whether the deputy sheriff was "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the investigatory stop. *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). In making this assessment, the court there stated "it is imperative that the facts be judged against an objective standard: would the facts *available to the officer* at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" (emphasis supplied). Probable cause "does not demand any showing that such a belief be correct or more likely true than false." *Texas v. Brown,* 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983). Finally, the court, in making the decision whether an investigatory stop was proper, "should take care to consider whether the police are acting in a swiftly developing situation, and in such cases *the court should not indulge in unrealistic second-guessing." United States v. Sharpe,* 470 U.S. 675, 686, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985). (emphasis supplied). The court there said "[a] creative judge engaged in *post hoc* evaluation of police conduct can almost always imagine some alternative means by which the objectives of the police might have been accomplished." *Id.* at 686–687, 105 S.Ct. at 1575–1576 (emphasis in original).

The evidence is undisputed that Deputy Yeager knew from his years of experience that burglaries of businesses commonly occurred during the hours of closure; that this business normally closed by midnight each night; that when he saw the pick-up truck parked on the darkened side of the building at 2 a.m. it was "suspicious" to him and that he should investigate. Before he could reach the station, however, appellant drove off. It certainly was not unreasonable for the deputy to stop appellant in order to detain him while they further investigated a possible burglary. It was not necessary for the deputies to check to see if there had been *in fact* a burglary of the business prior to stopping the departing appellant. It was totally immaterial that there had not been, *in fact,* a burglary of the business. The search was not dependent upon probable cause to believe that a burglary had been committed. That simply is not the question presented. The search was justified as incident to the lawful *arrest* for driving without an operator's license and proof of insurance.

The trial judge clearly abused his discretion in applying the undisputed facts to the well-established law regarding investigative stops. The majority errs in misapplying the law. I dissent.