**Eliecer Lopez MURILLO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. A14–92–00865–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 21, 1993.

Elaine M. Marsolais, Houston, for appellant.

Kimberly Aperauch Stelter, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and ELLIS and LEE, JJ.

### OPINION

ELLIS, Justice.

Appellant, Eliecer Lopez Murillo, appeals his judgment of conviction for the offense of possession with the intent to deliver over 400 grams of cocaine. TEX.HEALTH & SAFETY CODE ANN. § 481.102(2) and § 481.112(a), (d)(3) (Vernon 1992). Appellant waived his right to a jury trial and the Court found him guilty and assessed punishment at twenty (20) years confinement in the Institutional Division of the Texas Department of Criminal Justice and a $10,000 dollar fine. We affirm.

Appellant contends in his sole point of error that the trial court erred in overruling his motion to suppress. The facts as developed at the motion to suppress hear-

ing are as follows: On November 6, 1991, Officer Rodriguez of the Houston Police Department Narcotics Interdiction Division was working at the Houston bus station. His duty that day was to look for narcotics trafficking at that location. At 8:30 p.m., Rodriguez observed appellant arriving in a taxi cab. Appellant immediately went to the passenger waiting area and was walking in a "very hurried fashion." Rodriguez testified that narcotics couriers usually arrive at the last minute and already have a ticket in hand whereas regular passengers will typically enter the ticket line or check whether the bus is early or late.

Appellant sat at a pay-per-view T.V. and put his feet on the small duffle bag he was carrying. He turned on a walkman radio then put a quarter into the T.V. Appellant did not focus on the T.V. but instead scanned the lobby as though to look for who might be watching him. Rodriguez testified that this too was common behavior for people carrying drugs. After five or ten minutes, Rodriguez approached appellant, identified himself as a police officer, and asked if he could talk to him. Appellant said yes. Officer Rodriguez was wearing jeans, a T-shirt and a baseball cap, and although he had a weapon, it was not visible.

Rodriguez asked if appellant was leaving on a bus or if he had just arrived. Appellant stated that he was going to Tampa, Florida. Rodriguez asked if appellant was from Houston or Tampa. Appellant replied that he lived in Tampa but was in Houston visiting his brother for a week. Rodriguez then asked if he could see appellant's bus ticket, and appellant handed him a ticket which was purchased earlier that day with cash. The ticket showed Tampa as its final destination. Rodriguez testified that Tampa had recently become a major narcotics area and that narcotics couriers usually purchase their bus tickets in cash. Rodriguez asked appellant if he could see his identification. With his arm shaking, appellant showed the officer a Texas Driver's License showing a Houston address. This of course conflicted with appellant's story that he lived in Tampa and was just visiting Houston. Rodriguez never took possession of the license but just looked at it and thanked appellant.

Rodriguez asked if he could look in appellant's bag but informed him that he did not have to let him. Appellant told Rodriguez to go ahead and look inside. Rodriguez opened the bag and noticed a strong odor of fabric softener which he had learned from past investigations is used to cover up the smell of narcotics. Rodriguez found a hard brick shaped object wrapped in black plastic at the bottom of the bag. Rodriguez asked appellant what it was and appellant told him it was marijuana. When Rodriguez unwrapped the object he discovered that the brick was actually two pounds of cocaine. At the conclusion of the hearing, the trial court overruled appellant's motion to suppress.

 The trial court is the sole and exclusive trier of fact and judge of the credibility of witnesses as well as weight to be given their testimony at a hearing on a motion to suppress. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990). His findings concerning the admissibility of evidence should not be disturbed absent a clear abuse of discretion. *Rivera v. State*, 808 S.W.2d 80, 96 (Tex.Crim.App.1991). Upon review, the evidence adduced at a suppression hearing is viewed in the light most favorable to the trial court's ruling in determining whether the trial court abused its discretion in denying the Motion to Suppress. *Daniels v. State*, 718 S.W.2d 702, 704 (Tex.Crim.App.1986). An appellate court is not at liberty to disturb any finding which is supported by the record. *Johnson v. State*, 803 S.W.2d 272, 287 (Tex.Crim. App.1990).

The Fourth Amendment to the United States Constitution provides that "the right of the people to be secure in their person, houses, paper, and effects, against unreasonable searches and seizures, shall not be violated." *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). See also U.S. CONST. amend. IV.

Art. I § 9 of the Texas Constitution, which bears a striking resemblance to its federal counterpart, provides:

The people shall be secure in their person, houses, papers and possessions, from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, not without probable cause, supported by oath or affirmation.

TEX. CONST. art. I § 9.

■ This is not to say that the Constitution forbids all searches and seizures; it is only those intrusions which are deemed unreasonable that the Constitution proscribes. *Terry*, 392 U.S. at 9, 88 S.Ct. at 1873. Nor do the provisions thus cited extend their protection to all encounters between the police and citizens. *Daniels v. State*, 718 S.W.2d 702, 704 (Tex.Crim.App. 1986), *cert. denied*, 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 252 (1986). "Law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some question, [or] by putting questions to him if the person is willing to listen." *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). *See also United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). "The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but 'to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.'" *Mendenhall*, 446 U.S. at 553–54, 100 S.Ct. at 1877. An individual is seized, for Fourth Amendment purposes, when his freedom of movement is inhibited by means of physical force or a show of authority. *Id.* at 553, 100 S.Ct. at 1876. It is only when this type of restraint is imposed that the discussed Constitutional safeguards are invoked. *Id.*

■ The law is equally clear that not all seizures of a citizen must be justified by probable cause to arrest for the commission of a crime. *Royer*, 460 U.S. at 498, 103 S.Ct. at 1324; *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). Circumstances falling short of probable cause for arrest may justify a temporary detention for investigative purposes "since an investigation is considered to be a lesser intrusion on the personal security." *Brem v. State*, 571 S.W.2d 314, 318 (Tex.Crim.App.1978). A law enforcement official need only possess a reasonable suspicion of criminal activity before being authorized to make an investigative detention. *Daniels*, 718 S.W.2d at 704. Such a detention is justified "if the law enforcement officer has specific, articulable facts, which in light of his experience and general knowledge, together with [a] rational inference from those facts, would reasonably warrant the intrusion on the freedom of the citizen stopped for further investigation." *Brem*, 571 S.W.2d at 318. *See also Terry*, 392 U.S. at 21, 88 S.Ct. at 1880.

■ In the instant case, appellant agrees that Officer Rodriguez had every right to approach appellant and ask him some questions. Appellant argues that the questioning became a detention after Rodriguez asked appellant if he were carrying drugs and asked to search his bag. However, Rodriguez never detained appellant nor did appellant ever indicate that he did not feel free to leave. Appellant was not taken to a different location or made to move from where he was sitting prior to police contact. *Compare Willis v. State*, 801 S.W.2d 204, 208 (Tex.App.—Houston [14th Dist.] 1990, pet. ref.). Officer Rodriguez testified that if appellant had ever walked away, he would have let him go. Rodriguez never threatened appellant that he could obtain a search warrant and he expressly informed appellant that he did not have to consent to a search of his bag. Appellant has not shown that he was detained at the time he voluntarily consented to a search of his bag.

Appellant ignores the fact that he lied to police about where he lived. In *Holladay v. State*, 805 S.W.2d 464 (Tex.Crim.App. 1991), the Court of Criminal Appeals found that this factor in conjunction with factors similar to this case, were significant.

"[T]he relevant inquiry is not whether the particular conduct is innocent or guilty, but rather the degree of suspicion

that attaches to particular noncriminal acts. (citation omitted). Appellant's nervous conduct, his bold-fact lying to [the officer], and [the officer's] experience with drug trafficking surveillance led to a great degree of suspicion of appellant's behavior that something criminal was afoot, specifically drug trafficking."

*Holladay v. State*, 805 S.W.2d at 473.

*See also United States v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (reasonable suspicion when defendant paid for ticket in cash, destination was source city, he appeared nervous, and travelled under a name that did not match the name under which his telephone number was listed). In the instant case, the trial court stated that appellant's lying about his residence was the "turning point" for the court and put him in a position "different than an ordinary citizen's innocent conduct." We find that the Court's ruling is amply backed by the reasoning of *Holladay* and *Sokolow*. Appellant's sole point of error is overruled.

Accordingly, the judgment of the trial court is affirmed.