The STATE of Texas, Appellant,

v.

Kenneth Scott HAMLIN, Appellee.

No. B14–93–00377–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 20, 1994.

Opinion Denying Rehearing
En Banc Feb. 17, 1994.

Alan Curry, Houston, for appellant.

Robert C. Bennett, Marjorie A. Meyers, Houston, for appellee.

Before MURPHY, SEARS and DRAUGHN, JJ.

## OPINION

SEARS, Justice.

Appellee was indicted for felony possession of marihuana. The trial court granted his motion to suppress. The State maintains that the trial court erred in finding that the Appellee was detained when he consented to the dog sniff of his luggage, and in the alternative, that the court erred in finding that the officer lacked reasonable suspicion for the detention. We affirm.

On the morning of December 2, 1992, Officer Luiz and three other officers were conducting surveillance of the Amtrak train station in Houston. They were dressed in civilian clothing, and monitoring train number 522 due to depart Houston at 9:10 am.

Officer Luiz was the first of the team to arrive, and was sitting in the parking lot in her vehicle when a red Suzuki Samurai pulled up behind her. It was approximately 8:03 am. Two men exited the vehicle and walked into the station together. They were not carrying any bags. A few minutes later, the driver stepped outside and returned to the vehicle. A short time later, Appellee followed, carrying a ticket in his hand. The two men sat in the car, talking, while the driver lit a cigarette. They opened up the jacket of the ticket, looked at it, and passed it between themselves.

After a short while, the driver opened the car door, emptied his ashtray, and then lit up another cigarette. The driver and passenger passed this cigarette between themselves.

The manner in which they smoked this cigarette was different from the manner in which the driver had smoked the first cigarette. The driver would cup his hands over the second cigarette and Appellee would "duck down" while smoking it. Officer Luiz, however, made no mention of this "suspicious smoking" in her offense report. Further, she stated at the motion to suppress that she did not "pay too much attention to them because [she] didn't want them to know that [she] was looking." Officer Luiz then went into the train station. Both men remained in the Samurai. She observed their behavior from inside the station, and noticed that they turned around and looked whenever a car would pull up.

Officer Luiz checked with the agents at the ticket counter for information concerning Appellee's destination. She was told that Appellee was traveling alone to Altoona, Pennsylvania. He had purchased a one-way ticket under the name of Scott Hewitt and he paid for it in cash. No bags were checked. At 9:00am the train blew its whistle, and people started lining up to board the train. The driver and Appellee exited the Samurai. Appellee retrieved a brown suitcase and a jacket from the vehicle and proceeded into the station. As they walked towards the boarding platform, the driver pulled Appellee aside, and motioned for him to go around to the side of the station. It was approximately ten minutes to departure time.

At this time, Officer Luiz approached Appellee and identified herself as a Houston police officer. She asked Appellee if she could speak with him, and he consented. She asked him if he was traveling, and he stated that he was. She asked him where he was going, and he responded, "Pennsylvania." She asked to see his ticket, and Appellee handed it to her. The name on the ticket read, "Scott Hewitt," and the destination was Altoona, Pennsylvania. She asked the Appellee if he lived in Pennsylvania, and he told her that he lived in Altoona. She asked him how long and why he had been in Houston, and Appellee responded that he had been here for 3 days visiting his girlfriend. Officer Luiz requested some identification from Appellee, and he indicated that he was not carrying any. She asked him if he thought it was strange for a person to carry no identification. Appellee simply shrugged his shoulders. At this point, all the information the officer had obtained from the ticket agent was confirmed by Appellee.

Officer Luiz informed Appellee that he was not under arrest, but she continued to question him. She asked him how he had arrived at the station, and he pointed to the driver of the Samurai. Appellee asked Officer Luiz what was going on, and she told him "we [are] narcotics officers and we [are] conducting a routine investigation." She asked him if he was carrying any narcotics, and he responded that he was not. Officer Luiz then asked to look in his bag. Appellee refused the request. At this point, the train was leaving in five to seven minutes. Officer Luiz persisted, and asked Appellee if he had any objections to her "running a narcotics detection dog on the bag." Appellee then acquiesced. Rico, the trained narcotics dog, alerted on Appellee's bag. The officers opened the bag and found bundles of marihuana. Upon a search of the appellee, the officers found a gram of cocaine in his shirt pocket.

■ The trial judge is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Meek v. State*, 790 S.W.2d 618, 620 (Tex.Crim.App.1990). A trial court's findings in a pretrial hearing will not be disturbed absent an abuse of discretion. *State v. Gilliam*, 832 S.W.2d 119, 121 (Tex.App.—Houston [14th Dist.] 1992, no pet). Upon review of a ruling on a motion to suppress, this court must view the evidence in the light most favorable to the trial court's ruling. *Id.*

■ The State maintains that the trial court abused its discretion in finding that Appellee had been detained. Not all encounters between police and citizens invoke the protections of the Fourth Amendment or the Texas Constitution. "A seizure does not occur simply because a police officer approaches an individual and asks a few questions." *Mitchell v. State*, 831 S.W.2d 829, 832 (Tex.App.—Houston [1st Dist.] 1992, pet ref'd). However, once an individual's freedom of movement is inhibited by means of

physical force or a show of authority, that individual is *seized* for purposes of the Fourth Amendment. *Murillo v. State,* 850 S.W.2d 198, 200 (Tex.App.—Houston [14th Dist.] 1993, no pet). The inquiry then becomes, taking all of the circumstances into account, whether the police officer's conduct "would have communicated to a reasonable person that he was not at liberty to ignore [the officer] and go about his business." *Mitchell* at 832.

▮ In *Holladay v. State,* 805 S.W.2d 464 (Tex.Crim.App.1991), the Court of Criminal Appeals addressed the issue of *when* an individual is detained. The Court held that an officer's "request for permission to search [an] appellant's luggage convert[s] the initial encounter into an investigative one, albeit very brief." They concluded that the individual had been subject to an investigative detention implicating his Fourth Amendment rights. *Holladay* at 472. In light of *Holladay,* we hold that Appellee was detained at the time Officer Luiz requested permission to search his bag. Now, we must determine whether Officer Luiz had reasonable suspicion for the detention.

▮ In *Crockett v. State,* 803 S.W.2d 308 (Tex.Crim.App.1991), the Court of Criminal Appeals addressed the issue of what constitutes reasonable suspicion for a detention. The officers in *Crockett* were "looking for narcotics" at the Amtrak station in Houston, Texas at 8:20am. While "monitoring" trains and passengers, the officers saw a vehicle pull up to the lobby area and a woman enter the station and stand in the ticket line. Appellant and the driver remained outside. Later, the driver entered the lobby, went to the restroom and returned to the car. After the driver returned, he and Appellant removed three pieces of luggage from the trunk of the car. Appellant took the luggage into the station without saying a word to the driver. The driver then left.

The woman purchased two tickets to Chicago, and paid for them with cash. She spoke to the appellant, and then walked with her luggage to the boarding area, staying always ten to fifteen feet ahead of the appellant. One of the officers approached the appellant, identified himself as a police offi-

cer, and asked if he could speak with him. Appellant consented. He answered several questions, appearing very nervous, and said he was worried about missing his train. The officer asked for identification and Appellant produced his driver's license. The officer then identified himself as a narcotics officer, and asked the appellant if he had any drugs in his luggage. Appellant denied that he did. The officer asked for permission to search the bags, and Appellant asked the officer if he had a search warrant. The officer said he did not but that he could get a dog to "smell [the] bags." Appellant went with the officer to another area of the station and a narcotics-sniffing dog was called in. The dog alerted on the appellant's bags.

This Court, in an unpublished opinion, affirmed the trial court's denial of the motion to suppress. *See, Crockett v. State,* C14–89–00566–CR (Tex.App.—Houston [14th Dist.] Jan. 11, 1990). We held that the behavior of the appellant, when "viewed in the totality of the circumstances ... constituted reasonable suspicion of criminal activity." The Court of Criminal Appeals reversed, and held:

> At a minimum ... the suspicious conduct relied upon by law enforcement officers must be sufficiently distinguishable from that of innocent people under the same circumstances as to clearly, if not conclusively, set the suspect apart from them.

*Crockett v. State,* 803 S.W.2d 308, 311 (Tex. Crim.App.1991), *citing Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979).

In this case, Officer Luiz testified that she thought Appellee and the driver were suspicious because:

> they [came] in an hour early. They both [went] in to purchase a ticket and only one came out with a ticket. The way they were smoking the cigarette in the vehicle, the fact that they had no bags when they purchased the ticket and when it came time to board, they retrieved the bag from the back of the—and the cash, one-way ticket destination was Pennsylvania.

These facts are remarkably similar to *Crockett.* These actions and events are indistinguishable from those of innocent persons under the same or similar circumstances.

Therefore, viewing these facts in light of *Crockett,* we find that the trial court did not abuse its discretion in finding that Officer Luiz lacked reasonable suspicion to detain Mr. Hamlin.

We recognize that drugs are a cancer that deeply effect our society, and we believe that police officers must be free to act on their suspicions and investigate those persons whom they believe are involved in drug activities. The officers are taught to use their experience and training to separate criminals from law abiding citizens, and the officers' suspicions are usually correct. To detain a law abiding citizen for a short period of time in an effort to control this serious cancer does not seem too great a price to pay to stop the trafficking and related crimes. The sale and use of drugs are the major causes of most crimes committed in the United States. Perhaps we need to create specific exceptions to deal with the rising problem of drugs, as we have in border searches. However, because we are bound by the prior decisions of the Court of Criminal Appeals, we reluctantly affirm the trial court's decision.

DRAUGHN, Justice, dissenting.

I respectfully dissent, but I understand the majority's reluctance to reverse in view of the language expressed in *Holladay* that by merely asking for consent to search, a police officer has effected a seizure or detention under the Fourth Amendment or the Texas Constitution.

Rather, I would review the conduct of the officer and the defendant in the context of the specific facts of each case to determine if the consent to search was voluntary or coerced in some fashion. By applying this standard, I disagree with my brethren's implication that taking all the circumstances into account the officer's conduct here communicated to this reasonable person that he was not at liberty to ignore the officer and go about his business. Citing to *Mitchell v. State,* 831 S.W.2d 829, 832 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd).

Here, appellee apparently had no fear or reservation about refusing the officer's request to search his bag. He simply told her no. No search resulted. In view of this, he certainly must have realized that he could have just as well told her no with regard to the requested canine sniff-test. She made no threat, no show of force, and unlike the officer in *Holladay,* she did not state or suggest that she had legal authority to detain him for a dog-sniff test without his consent. The fact that she asked for his permission coupled with his prior unqualified refusal, militates against the trial court, or us on appeal, engaging in a form of retroactive mind-reading, so as to infer that appellee was somehow psychologically forced to consent to the dog-sniff test. The actual circumstances just do not support such an inference.

Any innocent, or even another drug-carrying passenger, proceeding through this train station on this day could have refused to consent to a search just as appellee did. And assuming, as we must, absent any contrary indicia, that the passenger was a reasonable person, and having refused a request to search his bags, the passenger would also have realized, (unless he were misled in some manner), that he could have refused a dog-sniff request. A request by its nature implicates the right to refuse. Simply stated, the appellee voluntarily gambled that the dog would not be able to detect the bundles of marihuana in his bag, and lost. Instead of refusing the request for a dog-sniff test as he had the prior search request and proceeding on his way, he voluntarily consented, and he should be called to account for his possession of illegal drugs.

In sum, I would hope that the Court of Criminal Appeals would re-visit *Holladay* and conclude that the mere requesting of permission to search without more does not automatically constitute either a seizure or an investigative detention of the person, to whom the request is directed. I agree with the majority that the few seconds it takes for a member of the travelling public to say no, (or yes, if he or she so chooses), to an officer's request for permission to search is a small price to pay to help stem the tide of illegal drugs. In my opinion, the trial judge should examine the facts of each case to determine if there is specific indicia that the officer used actual or implied force, threat or trickery which might have coerced the indi-

vidual *into* consenting to a search. If there is such indicia, the consent is tainted and the evidence should be suppressed. But in my opinion the mere fact that an officer properly identifies himself and his purpose and requests permission to search without anything else is not per se coercive and does not, standing alone, result in such a serious investigative detention as to trigger grave constitutional issues of search and seizure.

The trial court in such cases should also examine the conduct of the individual to determine if his conduct indicates that he understood that he had the right to refuse the officer's requests. If his conduct reflects such understanding, then his consent is voluntary and the evidence found should be admitted. Here, the defendant by refusing the request for a search of his bag indicated he understood his right to refuse, and did. Thus, his subsequent consent to the dog-sniff test was voluntarily made.

Based on the facts of this case, I would reverse the trial court's decision to suppress the evidence of illegal drugs found in appellee's possession.

### OPINION ON MOTION FOR REHEARING EN BANC

The State has filed a motion for rehearing en banc in which it contends that the opinion issued in this appeal is directly contrary to federal opinions, prior opinions of this court, and opinions of other appellate courts within the State.

The appellant in this case was observed at a train station and, based upon the arresting officer's observation, was stopped and asked questions. When asked if the officer could search his luggage, the appellant replied "no". The officer then asked the appellant permission to have a "sniff dog" come and "sniff" the luggage, to which the appellant consented. In the *Murillo* [1] case, cited by the State as conflicting with this Court's opinion, Murillo *consented* to the officer's first request to look into his bags and there

was no second request for a "sniff" dog to check the luggage. Appellant herein said "*no*" to the *initial* request by the arresting officer. We find the facts of the two cases are different and are not conflicting. The State also cites *Layne v. State* [2] from our sister court. In *Layne*, the defendant *consented* to the search, and, as pointed out in that opinion, "the officers did not threaten to hold the luggage for a 'dog sniff' for contraband." Obviously the *Layne* case is different from this appeal, and is not conflicting. Also, the defendant in *Layne* consented to the *initial* request for a search. The State further cites *Morrow* [3] in which the police had already searched the bag pursuant to a dog sniff in the luggage area. Therefore, a dog had already alerted on the luggage prior to the appellant picking it up, and it was searched and contraband found by the police. Again, the cases cited by the State are inapposite.

The Court of Criminal Appeals appears to be saying that if a defendant says "no" to the initial request for a luggage search, he must be free to go, and the State cannot go further without a "detention" occurring. As stated in our original opinion, we do not agree that the police should be "handcuffed" and prohibited from using the skills that they have developed in order to stop the flow of illegal drugs. However, we are still constrained to follow the opinions of the higher courts of the State.

The State also contends that the officer in this appeal had sufficient "reasonable suspicion" to conduct a temporary investigative detention. The State lists several observations made by the arresting officer that were "of importance to narcotics officers and form the basis for the reasonable suspicion." Some of the observations, which were alleged by the arresting officer as being common to all drug couriers, were the facts that this appellant had no luggage, arrived early, and stood in line to purchase a ticket. In *Murillo*, cited by the State in the motion for rehearing, the arresting officer testified that:

1.  *Murillo v. State*, 850 S.W.2d 198, 200 (Tex. App.—Houston [14th Dist.] 1993, no pet.).

2.  *Layne v. State*, 752 S.W.2d 690, 693 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd).

3.  *Morrow v. State*, 757 S.W.2d 484, 490–91 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd), *cert. denied*, 493 U.S. 921, 110 S.Ct. 285, 107 L.Ed.2d 265 (1989).

narcotics couriers usually arrive at the last minute; already have their ticket; and that regular passengers will typically enter the ticket line. The observations by appellants' arresting officer are directly contrary to the testimony by the arresting officer in *Murillo*, as to which activity is consistent with normal, non-criminal activity. We hold that the arresting officer's stated reasons for finding appellant's activity worthy of investigation cannot possibly provide "sufficient reasonable suspicion in order to conduct a temporary investigative detention."

The motion for rehearing is overruled.