Shane Allan TELSHOW, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–96–00294–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 22, 1998.

Troy Scott Locklear, Houston, for appellant.

Calvin Hartmann, Houston, for appellee.

Before LEE, AMIDEI and ANDERSON, JJ.

## OPINION

ANDERSON, Justice.

This is an appeal of a pretrial motion to suppress. Shane Allan Telshow [Telshow] appeals the denial of his motion to suppress all evidence seized and statements made as a result of an illegal stop and subsequent arrest. We affirm.

Telshow brings four points of error. In points of error one and two Telshow argues the trial court erred in overruling his motion to suppress evidence based on the allegation he was illegally seized without reasonable suspicion in violation of the Fourth and Fourteenth Amendments to the United States Constitution and Article I, § 9 of the Texas Constitution. In points of error three and four Telshow argues the trial court erred in overruling his motion to suppress because he was illegally arrested without probable cause in violation of the Fourth and Fourteenth Amendments to the United States Constitution and Article I, § 9 of the Texas Constitution.

At approximately 1:42 a.m., Officer Ricky Doerre [Doerre] observed a vehicle parked beside a house in a residential subdivision. Doerre noticed Telshow standing at the rear of the vehicle. The Officer noticed Telshow was looking toward the adjacent house. He also saw another individual standing in the shadows of the house near a window. The officer noted the person standing next to the house was wearing dark pants and a black shirt. Both men got into the car, with Telshow in the driver's seat, and drove off down the street when they saw Officer Doerre.

Officer Doerre testified he considered these activities suspicious.[1] He believed Tel-

1. At the hearing on the motion to suppress, Tel- show and his companion testified they had

show was acting as a lookout or getaway driver for the other individual standing in the shadows of the house. Therefore, Doerre initiated a stop of the vehicle. Telshow was later charged with misdemeanor driving while intoxicated.

■ In points of error three and four, Telshow argues Article I, § 9 of the Texas Constitution provides greater protection than the Fourth Amendment to the United States Constitution and therefore this court should conduct an independent analysis based on the Texas Constitution. Texas courts are not bound by Fourth Amendment precedent when interpreting Article I, § 9 of the Texas Constitution. *See Heitman v. State,* 815 S.W.2d 681, 690 (Tex.Crim.App.1991). However, this court is unable to find any authority requiring a more restrictive standard under Article I, § 9 than under the Fourth Amendment when reviewing investigative stops, arrests, or probable cause. *See Tate v. State,* 939 S.W.2d 738, 750 (Tex.App.—Houston [14th Dist.] 1997, no.pet.h.); *Murray v. State,* 864 S.W.2d 111, 115–116 (Tex. App.—Texarkana 1993, pet. ref'd). Without guidance from the Texas Legislature or the Court of Criminal Appeals, we will interpret Article I, § 9 as consistent with the interpretation of the Fourth Amendment by the United States Supreme Court and the Court of Criminal Appeals. *See Tate,* 939 S.W.2d at 750. Therefore, we will discuss points of error one and two together and points of error three and four together.

In points of error one and two, Telshow argues his motion to suppress was erroneously denied because there was no reasonable suspicion justifying his seizure. In 1996 the Texas Court of Criminal Appeals described the standard of review applicable to the denial of a motion to suppress evidence. *See DuBose v. State,* 915 S.W.2d 493, 496 (Tex.Crim.App.1996). The *DuBose* court stated that a court of appeals analyzing a trial court's denial of a motion to suppress evidence must be deferential to the trial court's judgment, not only as to the historical facts, but also as to the legal conclusions to be drawn from the historical facts—at least so long as it appears the trial court has

applied the correct standard of law to those historical facts. *See id.* at 497–98. They should reverse the trial court's decision only for an abuse of discretion, which occurs when it appears the trial court applied an erroneous legal standard, or when no reasonable view of the record could support the trial court's conclusion under the correct law and the facts viewed in the light most favorable to its legal conclusion. *See id.*

■ The Court of Criminal Appeals has now expressly overruled *DuBose. See Guzman v. State,* 955 S.W.2d 85 (Tex.Crim.App. 1997). In *Guzman,*the court held that courts of appeals should afford almost total deference to a trial court's determination of the historical facts that the record supports. *See id.* at 9–10. Furthermore, the courts of appeals should afford the same amount of deference to the trial court's rulings on application of law to fact questions, referred to as mixed questions of law and fact, if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *See id.* However, de novo review of these mixed questions of law and fact may be applied where the resolution thereof is not restricted to an evaluation of credibility and demeanor. *See id.*

■ Telshow contends Doerre illegally stopped his car, not on reasonable suspicion, but rather on a mere hunch or suspicion. However, law enforcement officers are "not required to shrug their shoulders and permit crime to occur...." *Milton v. State,* 549 S.W.2d 190, 193 (Tex.Crim.App.1977)(citing *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972)). An investigative detention must be founded on specific articulable facts amounting to more than a mere hunch or suspicion that, combined with the officer's personal experience and knowledge and any logical inferences, create a reasonable suspicion criminal activity is occurring. *See Amores v. State,* 816 S.W.2d 407, 411 (Tex.Crim.App.1991); *Garza v. State,* 771 S.W.2d 549, 558 (Tex.Crim.App. 1989); *Hoag v. State,* 728 S.W.2d 375, 380 (Tex.Crim.App.1987). At the suppression hearing, Officer Doerre testified he was pa-

stopped to relieve themselves.

trolling a residential neighborhood at 1:42 in the morning and saw two men in front of a house. One man, wearing dark clothing, was standing directly beside the house next to a window. Telshow, standing in the street next to the rear of the car, appeared to Officer Doerre to be a lookout for the other man near the house. Upon seeing the police officer, the two men immediately got into their car and drove off. As Officer Doerre testified, based on his experience, he believed a crime was in progress and, accordingly, stopped the vehicle Telshow was driving. For the reasons set forth below, we hold this evidence shows facts supporting a reasonable suspicion to justify stopping Telshow.

Telshow cites several cases supporting his argument that no articulable facts giving rise to a reasonable suspicion and justifying his stop were present. *See Johnson v. State*, 658 S.W.2d 623, 627 (Tex.Crim.App.1983); *Tunnell v. State*, 554 S.W.2d 697, 698–699 (Tex. Crim.App.1977); State v. Gilliam, 832 S.W.2d 119, 123 (Tex.App.—Houston [14th Dist.] 1992, no. pet.). However, each of those cases is distinguishable from the present case. *Johnson* involved a man parked next to a closed McDonald's restaurant in a truck loaded with furniture at 5:00 a.m. *See Johnson*, 658 S.W.2d at 625. Although the hour was early, it was a public place. In holding sufficient articulable facts were not present, the court specifically noted that the defendant was parked in a visible position from a main thoroughfare and was not hidden or parked near a door of the restaurant. *See id.* at 626. The court also noted the events in the case were as consistent with innocent activity as they were with criminal activity. *See id.* at 627.

In *Tunnell*, a policeman saw a car with three men parked in a well-light hospital parking lot at 2:16 a.m. *See Tunnell*, 554 S.W.2d at 698. The policeman knew a manufacturing plant, located approximately a mile away, operated twenty-four hours a day. *See id.* After the men drove off without violating any traffic laws, the policeman pulled them over. *See id.* The court found those facts insufficient to justify stopping the men. *See id.* at 699.

In *Gilliam*, a policeman noticed a truck parked next to a closed convenience store-gas station at 1:47 a.m. *See Gilliam*, 832 S.W.2d at 120–21. The policeman observed that the door of the truck was open and the defendant was walking back to the vehicle. *See id.* at 121. In holding the officer lacked reasonable articulable facts to justify the stop, the court noted how the defendant's actions could easily have been innocent. *See id.* at 123. The court noted that the defendant might not have known the store was closed and could have exited the highway to buy a cold drink, find a restroom, or pump gas. *See id.* "A truck parked in a closed convenience store parking lot in the early morning hours is as consistent with innocent activity as criminal activity." *Id.*

In his brief, Telshow emphasizes the holdings in *Johnson* and *Gilliam* finding insufficient articulable facts to support the investigatory detentions and the statements in those cases that the events in each were as consistent with innocent activity as they were with criminal activity. He concludes by arguing, without citing any supporting authority, that his stop was illegal because the events described by Officer Doerre were as consistent with innocent activity as with criminal activity. We need not address this aspect of Telshow's argument because Texas has recently abandoned the "as consistent with innocent activity" construct as the test for determining reasonable suspicion. *See Woods v. State*, 956 S.W.2d 33 (Tex.Crim. App.1997). In *Woods*, the court held the reasonableness of a temporary detention must be examined in terms of the totality of the circumstances and will be justified when the detaining officer has specific articulable facts, which taken together with rational inferences from those facts, lead him to conclude that the person detained actually is, has been, or soon will be engaged in criminal activity. *See* at 38–39. The *Woods* court recognized that there may be instances when a person's conduct, viewed in a vacuum, appears purely innocent, yet when viewed in light of the totality of the circumstances, those actions give rise to reasonable suspicion. *See* at 38. Here, while patrolling late at night, Officer Doerre saw one man standing next to a car idling in the street, looking

at another man standing in the shadows next to a house in a residential neighborhood. As the officer turned his patrol vehicle around to take a closer look, both men entered the car and drove off. These facts led Officer Doerre to conclude that a crime had been, or was about to be, committed.

█ In reaching its decision to abandon the "as consistent with innocent activity" construct, the *Woods* court relied extensively on language used in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) and cited in *U.S. v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). Both opinions were authored by the same Justice. In *Gates*, Justice Rehnquist stated that probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. *See* 462 U.S. at 245 n. 13, 103 S.Ct. at 2335 n. 13. He also noted that innocent behavior can frequently provide the basis for a showing of probable cause. *See id.* When making a determination of probable cause, the relevant inquiry is not whether the conduct is innocent or guilty, but the degree of suspicion attaching to particular types of noncriminal acts. *See id.* The *Woods* court also relied on *Sokolow*, where Chief Justice Rehnquist wrote that the above-described principle is the same for the lower threshold reasonable suspicion inquiry. *See* 490 U.S. at 9–11, 109 S.Ct. at 1587.

Accordingly, viewing the conduct of Telshow and his companion in light of the totality of the circumstances, we hold Officer Doerre's suspicion that criminal activity was afoot was reasonably based on specific articulable facts, thus justifying the investigatory detention of Telshow. Points of error one and two are overruled.

█ In points of error three and four, Telshow argues the trial court erred in overruling his motion to suppress because he was illegally arrested. In a motion to suppress evidence based on an illegal arrest, the burden of proof is initially with the defendant. *See Russell v. State*, 717 S.W.2d 7, 9 (Tex. Crim.App.1986). The defendant must establish a seizure occurred without a warrant. *See id.* The burden of proof then shifts to the State to produce evidence of a warrant.

*See id.* If evidence of a warrant is produced, the burden shifts back to the defendant to show the invalidity of the warrant. *See id.* at 10. If the State cannot produce evidence of a warrant, it must prove the reasonableness of the seizure. *See id.*

█ In this case, Telshow never met his initial burden of producing evidence that his arrest occurred without a warrant. Without affirmative evidence showing there was no warrant, the State never has the burden to prove reasonable suspicion to detain and probable cause to arrest. SeeWhite v. State, 871 S.W.2d 833, 836–37 (Tex.App.—Houston [14th Dist.] 1994, no pet.); Highwarden v. State, 846 S.W.2d 479, 480–81 (Tex.App.— Houston [14th Dist.] 1993, pet. dism'd, improvidently granted, 871 S.W.2d 726 (1994)); Johnson v. State, 834 S.W.2d 121, 122 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd).

█ Officer Doerre was never asked if he had a warrant to arrest Telshow. At oral argument, counsel for Telshow contended it was obvious from the facts of the case and the testimony at the suppression hearing that no warrant for Telshow's arrest existed. We disagree. We do not believe it is asking too much of defense counsel to merely demonstrate, through questions put to a witness, the nonexistence of a warrant at the time of the arrest. *See Russell*, 717 S.W.2d at 9 (noting "defendant must *produce evidence* that defeats the presumption of proper police conduct and therefore shifts the burden of proof to the State")(emphasis added). Error relating to an illegal search or seizure must be based on an affirmative showing, not mere speculation or innuendo. To allow here, as Telshow urges, the burden of proof to shift to the State without the requisite affirmative showing of the absence of a warrant would create a *de facto* exception, based on the totality of the facts at the hearing, to the burden of proof in a hearing on a motion to suppress evidence. In essence, Telshow seeks to shift the initial burden of proof when the testimony at the suppression hearing *circumstantially* demonstrates the defendant was arrested without a warrant. We cannot accept this

proposed erosion of the burden of proof at a suppression hearing. The defendant has the burden to prove the seizure occurred without a warrant, but Telshow failed to produce any evidence establishing that fact. Thus, the burden never shifted to the State to either produce evidence of a warrant or prove the reasonableness of the search or seizure pursuant to one of the recognized exceptions to the warrant requirement. This court addressed the same argument in *White*. In *White*, this court rejected the argument that absence of a warrant, which shifts the burden of proof, can be demonstrated by circumstantial testimony. *See* 871 S.W.2d at 836. We agree with, and are bound by the *White* opinion. *See also Johnson v. State*, 834 S.W.2d 121 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd) (holding that burden never shifted to State despite appellant's argument that testimony at the suppression hearing demonstrated circumstantially he was arrested without a warrant). Thus, because Telshow did not produce evidence affirmatively showing no warrant existed, his points of error three and four are overruled.

The order denying Telshow's motion to suppress is affirmed.