Affirmed and Opinion filed February 13, 2003














Affirmed
and Opinion filed February 13, 2003.

 

 

 

 

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO.
14-01-01035-CR

____________

 

CHERYL R. WILSON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On
Appeal from the 232nd District Court

Harris County, Texas

Trial
Court Cause No. 843,679

 



 

O
P I N I O N

Appellant,
Cheryl Wilson, was convicted by a jury of possessing 200 to 400 grams of
cocaine with intent to deliver.  The
court sentenced her to a term of 35 years= imprisonment.  In one point
of error, appellant claims the trial court erred in denying her motion to
suppress illegally seized evidence.  We
affirm.

Background
and Procedural History








On
May 4, 2000, appellant was involved in a single-car accident.  Emergency crews responded to transport
appellant to Ben Taub Hospital.  She requested that her belongings, a purse
and backpack, be retrieved from her car and sent with her to the hospital.  The officer on the scene, Jeffrey Roeder,
asked appellant if he could retrieve her identification from the purse and she
consented.  He removed a Texas
identification card and a Texas inmate card, but looked no further into the
purse.  At appellant=s
request, Roeder returned both bags to her and she was then transported by
ambulance to the emergency room.

Emergency-room
nurse Jeanne Coberstein noticed appellant=s
purse contained a large amount of cash and requested the nurse manager, Karen Tootoo, and the hospital=s clothing clerk, Stacey Fairish, to secure the property.  Tootoo testified
that hospital policy requires items valued at over one hundred dollars be sent
to the security office for inventory by a security guard and clothing
clerk.  Items of lesser value are put
into a safe.  If alert and oriented, a
patient is asked if she wishes to keep her valuables with her and, if so, is
informed that she is responsible for the items. 
Alternatively, if a family member is immediately available and the
patient so wishes, the valuables may be given to the family member.

After
arriving to inventory the property, Tootoo told
appellant that she intended to lock up her property.  Appellant repeatedly requested that the
property be given to her husband when he arrived.  However, no family members were currently
present and available to take possession of the bags.  Tootoo decided that
because of the large amount of cash involved she should lock it up anyway.  Tootoo, accompanied
by a security officer and clothing clerk, took the property to her office to
count the money.  When Tootoo and Fairish pulled the money out to conduct the
inventory, Fairish saw drug paraphernalia. 
Tootoo then stopped the proceedings and called
in a hospital contract officer who is an off-duty police officer.  The search revealed a variety of drugs, a
gun, scales, and over $5,000 in cash.








Officer
Roeder arrived at the hospital between 30 minutes and an hour and a half after
the appellant arrived and was taken to the office where appellant=s
belongings were being searched.  He
secured the office and called in the Narcotics Division of the Houston Police
Department.  Appellant was arrested and
charged with possession with intent to deliver a controlled substance.  Appellant filed a pretrial motion to suppress
alleging the evidence was seized as the result of an illegal detention, without
probable cause.

Standard
of Review

Motions
to suppress are subject to a bifurcated standard of review.  Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App.
2000).  As a general rule, an appellate court should
give almost total deference to a trial court=s determination of historical facts supported by the record,
especially when the trial court=s fact findings are based on an evaluation of credibility and
demeanor.  See Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App.
1997).  An appellate court should also
give the same amount of deference to the trial court=s
ruling on Aapplication of law to fact questions,@
also known as Amixed questions of law and fact,@ if the resolution of those ultimate questions turns on an evaluation
of credibility and demeanor.  See id.  An appellate court may review de novo Amixed
questions of law and fact@ not falling within this category.  See id.  If the trial court does not file findings of
fact and conclusions of law, an appellate court presumes the trial court made
findings necessary to support its ruling so long as those implied findings are
supported by the record.  See State v. Simmang, 945 S.W.2d 219, 221-22 (Tex. App.CSan Antonio 1997, no pet.).

Analysis

The
question presented here is an issue of first impression for this court.  We must first determine whether a patient
retains any expectation of privacy in belongings lawfully taken and inventoried
by hospital employees incident to emergency care.  Second, if we conclude that such a privacy
interest exists, we must determine whether it is subordinate to a legitimate
governmental interest.








In
a motion to suppress evidence, the burden of proof is initially with the
defendant to show that the seizure occurred without a warrant.  Russell v. State, 717 S.W.2d 7, 9
(Tex. Crim. App. 1986); Telshow
v. State, 964 S.W.2d 303, 307 (Tex. App.CHouston [14th Dist.] 1998, no pet.).  The
State expressly disclaimed reliance upon a warrant at the motion-to-suppress
hearing.  In the absence of a warrant,
the State must prove the reasonableness of the seizure.  Id. 
A search conducted without a warrant issued upon probable cause is per
se unreasonable subject only to a few specifically established and
well-delineated exceptions. Reasor v. State, 12 S.W.3d 813 (Tex. Crim. App.
2000).

Government Agents

The
Fourth Amendment to the United States Constitution applies only to searches and
seizures conducted by government officials and persons who act as agents or
instruments of government.  Burdeau v.
McDowell, 256 U.S. 465 (1921).  Ben Taub
Hospital is a governmental facility run by the Harris County Hospital District
and its emergency-room employees conducted the search.  Although not dispositive
as to the issue of the search=s reasonableness, Ferguson v. City of Charleston
unequivocally states that as Aa state hospital, the members of its staff are government
actors, subject to the strictures of the Fourth Amendment.@
532 U.S. 67, 76 (2001).  

As
government actors, the central issue is whether the warrantless
search of appellant=s bags was reasonable under the Fourth Amendment.  We find that it was. The relevant test is
whether under all the circumstances the search was reasonable.  South Dakota v. Opperman, 428 U.S. 364, 373 (1976).  The validity of a
particular search is judged by balancing the individual=s
expectation of privacy and the government=s legitimate interests.  Skinner v. Railway Labor Executives= Ass=n,
489 U.S. 602 (1989).

Privacy 








Appellant
claims a privacy interest in her purse and backpack.  To establish this interest appellant must
show: (1) she had an actual, subjective expectation of privacy in the invaded
possession; and (2) her expectation of privacy was one that society accepts as
reasonable.  Smith
v. Maryland, 442 U.S. 735, 740 (1979).  A general expectation
of privacy in a purse or backpack is reasonable because such baggage is
intended as a repository of personal effects. 
United States v. Chadwick, 433 U.S. 1 (1977).  Furthermore, appellant
demonstrated her subjective privacy interest by repeatedly requesting the bags
be given to her husband.  However, the
analysis does not end there.  

The
issue is whether under the circumstances appellant=s
reasonable expectation of privacy is diminished.  We find that it is.  Emergency medical care, by its very nature,
results in diminished privacy of the patient. 
Clothing, jewelry, billfolds, and bags are routinely removed for a
myriad of purposes.  See Vargas v.
State, 542 S.W.2d 151 (Tex. Crim. App. 1976)
(finding inventory of patient=s clothing admissible); Crawford v. State, 292 S.W.2d
123 (Tex. Crim. App. 1956) (finding stolen billfolds
removed from patient were admissible). 
It is unreasonable to tie the hands of hospital staff who
need to examine the personal effects of a patient in an emergency setting in
order to determine if he or she possesses any information that might throw
light on the care and treatment needed.  Crawford,
292 S.W.2d at 124. 


Because
of the diminished expectation of privacy that exists under
emergency-medical-care circumstances, appellant=s interest in the purse may be subordinate to legitimate
governmental interests.  Stewart v.
State, 611 S.W.2d 434, 438 (Tex. Crim. App. 1981)
(holding warrantless search of defendant=s
purse during booking was constitutionally permissible).  Therefore, it is necessary to balance these
interests to determine the validity of a particular search. 

Government Interest








The
State contends the search of appellant=s purse is a valid exception to the warrant requirement as a
standard inventory search under Opperman.  The United States Supreme Court has approved
the practice of securing and inventorying the contents of automobiles in police
custody and control, holding that it is not violative
of the Fourth Amendment=s prohibition of unreasonable searches and seizures.  Opperman, 428
U.S. at 373.  Under Opperman,
inventory searches are constitutional when carried out in accordance with
standard procedures and to the limited extent necessary for the care-taking
function.  Id. at 375.  The Court outlined
three distinct needs that underlie inventory searches making them a necessary
exception to the warrant requirement. 
These are to protect (1) the owner=s property, (2) police against claims, and (3) against
potential danger.  Id. at 369.  

The
Court of Criminal Appeals has found the reasoning and policies of these cases
to be fully applicable to hospital inventory searches.  Vargas, 542 S.W.2d
at 154.  Hospital staff testified
that the purpose of the hospital inventory procedure was to achieve these same
objectives: (1) protect the owner=s property while she remains hospitalized; (2) protect the
hospital against claims or disputes over lost or stolen property; and (3)
protect doctors and patients from potential dangers. 

As
in Vargas, the purpose of the inventory search was not to discover
contraband or to obtain evidence to be used against appellant in a criminal
action, but rather to secure and protect her belongings. 542
S.W.2d at 153.  These are valid
and well-established justifications for an inventory search.  AAn inventory search is reasonable under the requirements of the
Fourth Amendment not for the reason that the subjective motives of the hospital
staff are simplistically pure, but because the facts of the situation indicate
that an inventory search is reasonable under the circumstances.@  Id. at 155. 

The
nurse removed and examined appellant=s bags pursuant to hospital policy.  The purpose in the search was not investigatory,
but for the legitimate reasons put forth by the State.  The State established that these are valid
concerns for Ben Taub Hospital.  There has been a history of claims against
the hospital for missing items. 
Therefore, hospital policy dictates that any property in excess of $100
be inventoried and sent to security.  The
staff testified that it would be exceedingly difficult to protect property
merely left on the patient=s hospital bed, as the nurses=
attention is focused on patient care and unauthorized people are often found in
the hospital.  Furthermore, the emergency
staff discovered drugs and a weapon within appellant=s
belongings that could cause a direct threat to patients, hospital staff, and others
in the hospital.








Conclusion

Although
we recognize appellant=s reasonable expectation of privacy in her belongings, when
balanced with the hospital=s legitimate needs we find no Fourth Amendment violation.  Individuals entering an emergency-care
situation must recognize that their privacy interests are diminished.  Clothing, jewelry, and other personal items
are often removed for medical, safety, and efficiency reasons.  Hospital policy provided for the property to
be turned over to a third party if the patient so requests and the individual
is readily available.  The record
indicates that appellant had no family members present at the time she
requested her property to be turned over to them rather than being
inventoried.  In the absence of this
alternative, inventory searches such as the one hospital workers conducted here
are reasonably necessary to protect the interests of both the patient and the
hospital.  We therefore affirm.

 

 

/s/        Leslie
Brock Yates

Justice

 

 

 

 

Judgment rendered and Opinion filed
February 13, 2003.

Panel consists of Justices Yates,
Anderson, and Frost.

PublishC Tex. R.
App. P. 47.2(b).