Affirmed and Opinion filed April 15, 2004









Affirmed and Opinion filed April 15, 2004.

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00278-CR

____________

 

DAVID MICHAEL HILL, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 344th
District Court

Chambers County, Texas

Trial Court Cause No. 11,909

 



 

O P I N I O N

Appellant David Michael Hill pleaded
guilty to the offense of possession of more than five pounds but less than
fifty pounds of marijuana after the trial court denied his pretrial motion to
suppress the evidence.  The trial court
assessed punishment at ten years= deferred
adjudication probation and a $3,000 fine. 
In one point of error, appellant claims the trial court erred in denying
his pretrial motion to suppress.  We
affirm.

 

 








Background

On the morning of May 24, 2001, Lawrence
Lilly, Jr., a trooper with the Texas Department of Public Safety (ADPS@), stopped a
vehicle on I-10 in Chambers County for speeding and failure to signal a lane
change.  The vehicle had two
occupants.  Appellant was the driver of
the vehicle.  His brother, Van Hill, was
the passenger.  Based on appellant=s extreme
nervousness and appellant=s and Van=s inconsistent
stories and implausible explanation for their trip, Lilly asked for consent to
search the vehicle.  Appellant initially
consented to a search, but later withdrew his consent.  Lilly then called a canine unit to the scene,
and detained appellant and Van about eight minutes past the original purpose of
the traffic stop until the canine unit arrived. 
After the canine alerted on appellant=s vehicle, DPS
found about eight pounds of marijuana in the vehicle=s trunk.  Appellant does not contest the reasonableness
of the original traffic stop.  The
question on appeal is whether Trooper Lilly had cause to detain appellant after
the original purpose of the traffic stop. 

Standard of
Review

Once the investigation of the conduct that
initiated the traffic stop was concluded, continued detention of appellant was
permitted only if there was reasonable suspicion to do so.  Woods v. State, 956 S.W.2d 33, 35, 38
(Tex. Crim. App. 1997).  To demonstrate
reasonable suspicion, the State had to present to the trial court specific
articulable facts, which, when combined with rational inferences from those
facts, led Trooper Lilly to reasonably suspect in light of his experience and
knowledge that appellant had engaged, was engaging, or was soon to engage in
criminal activity.  Id.  This standard is an objective one:  there need only be an objective basis for the
detention; the subjective intent of the trooper conducting the detention is
irrelevant.  Garcia v. State, 827
S.W.2d 937, 943B44 (Tex. Crim. App. 1992).  The reasonable suspicion determination is
made by considering the totality of the circumstances.  Garcia v. State, 43 S.W.3d 527, 530 (Tex.
Crim. App. 2001).  








In conducting this
totality-of-the-circumstances determination, we use a bifurcated standard of
review.  We give almost total deference
to the trial court=s determination of historical facts
supported by the record and the application of law to fact questions that turn
on credibility and demeanor, however, we review de novo application of law to
fact questions that do not turn upon credibility and demeanor.  Carmouche v. State, 10 S.W.3d 323, 327
(Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).  Accordingly, we view the
evidence and all reasonable inferences therefrom in the light most favorable to
the trial court=s ruling, and sustain the ruling if it is
sufficiently supported by the evidence and is correct on any theory of law applicable
to the case.  Villarreal v. State,
935 S.W.2d 134, 138 (Tex. Crim. App. 1996). 


Discussion

At the hearing on the motion to suppress,
the State introduced the testimony of Trooper Lilly and Trooper Ted Smith, a
canine handler with DPS.  The traffic
stop and search of appellant=s vehicle was
videotaped by a camera mounted in Lilly=s patrol
vehicle.  The videotape was also admitted
into evidence by the State, and we have reviewed it as a part of our review of
the record.








Trooper Lilly, who had been working with
DPS for six years as of the date of the hearing, testified that when he pulled
appellant over on May 24, 2001, his intent was to write appellant citations for
the two driving violations.  After Lilly
asked appellant to step in front of the patrol car, appellant=s hands shook
tremendously when he handed his driver=s license over to
the trooper.  Appellant hesitated when
asked about where he had come from that morning, but then responded APasadena.@  Appellant told Lilly he and Van had come from
Florida to the Houston area to buy a truck because they could get one a lot
cheaper in Houston.  They had driven from
Florida, had spent one day in Houston, and were headed back to Florida.  Appellant told Lilly that they had found a
couple of trucks.  Lilly thought it
implausible that someone would drive from Florida to spend just one day in
Houston to shop for a truck.  Appellant
said he thought they had spent the night at the Pasadena Inn.  Appellant initially told Lilly that a friend
of Aours@ had loaned him
the car for the trip, but when he could not recall the last name of the car=s owner, appellant
said that the owner was actually a friend of Van.  Lilly thought it was odd that appellant was
driving a car, but did not know the last name of the car=s owner.  Appellant was very fidgety and fiddled with a
piece of paper the whole time he spoke with the trooper.

Lilly then walked over to Van, who had
remained seated in the vehicle.  When he
approached the vehicle, Van started looking at a magazine, and never looked up
from itChe made no eye
contact with Lilly.  Van said he thought
they were coming from Pasadena and had been there looking for trucks.  Van said he did not know if they had found
any trucks yet because they were still looking. 
Van said he thought they had stayed at the Pasadena Motor Inn the
previous night.  When asked where they
were going, Van said they were going to Baytown, Beaumont, and all around the
area.  Trooper Lilly told Van that they
were past Baytown.  Van said that they
were going to be looking around in the area that day and then head back to
Florida if they found something.  Van
told Lilly that he could not find his driver=s license although
Lilly saw Van flip past the license as they were talking.  Lilly noticed that while he was questioning
Van, appellant paced back and forth nervously.

Trooper Lilly then went back over to
appellant.  He asked appellant if he and
Van were headed back home, and appellant responded that they were going to stop
in Beaumont.  When Lilly asked for
consent to search the vehicle, appellant looked back at the vehicle twice and
seemed unsure how to answer.  Appellant
initially consented to the search, but sensing hesitation on appellant=s part, Lilly
informed appellant that he did not have to consent to a search.  Appellant then withdrew his consent.  

Lilly went to his patrol car and called
the canine unit, but it did not respond. 
He contacted dispatch to run the driver=s license numbers
of appellant and Van.  Lilly then made
contact with the canine unit, which arrived approximately eight minutes after
dispatch notified Lilly that appellant and Van did not have any outstanding
warrants.








Appellant contends the videotape
contradicts the testimony of Trooper Lilly. 
Specifically, appellant argues that on the videotape (1) neither his
hands nor voice appear to shake; (2) he does not hesitate when asked where he
was coming from; (3) he uses Atrucks@ in the plural and
Van uses Atruck@ in the singular;
(4) Van asks if he needed to get out of the car; and (5) he was not pacing
nervously.  After viewing the videotape,
we conclude the events as captured by the camera do not undermine Lilly=s testimony at the
suppression hearing.  

Due to the very poor quality of the
videotape,[1]
it is impossible to determine whether appellant=s hands were
shaking during the traffic stop. 
Moreover, appellant=s hands are
somewhat obstructed because of where Trooper Lilly was standing.  It is also unclear whether appellant
hesitates when asked from where he was coming. 
Appellant makes a  response to
Trooper Lilly directly following the question, but his response is inaudible
due to traffic noise.  When the noise
subsides somewhat, appellant says APasadena.@  On the tape, it is appellant who uses Atrucks@ and Van who uses Atruck.@  However, Lilly=s conclusion that
appellant and Van made inconsistent statements about the purpose of their trip
is not undermined because he incorrectly recalled which one of the vehicle=s occupants used
the singular rather than the plural.  Van
does ask Trooper Lilly if he needs to get out of the vehicle, but this fact
does not contradict Trooper Lilly=s testimony that
Van made no eye contact with him and stated that he could not find his driver=s license although
Lilly saw him flip past it while they were talking.  Appellant does pace in place and back and
forth in front of the patrol car while Trooper Lilly was speaking with Van.  We disagree with appellant=s contention that
his movement was minimal.  The videotape
also shows that appellant looked back at the vehicle three times (not two
times) when Trooper Lilly asked for consent to search.  Moreover, the videotape captured remarks
Lilly made to the canine handler when he arrived at the scene: AStories . . . .
This guy=s so nervous . . .
I wonder if he=s going to pass out.@  These comments further support the testimony
of Trooper Lilly that the level of nervousness he was observing was not the
typical amount of nervousness exhibited during a traffic stop.








Trooper Lilly testified to many facts that
developed a reasonable suspicion in his mind that appellant was engaging or was
soon to engage in criminal activity.  See
id.[2]  An officer is entitled to rely on all of the
information obtained during the course of his contact with a suspect  in developing articulable facts that would
justify a continued investigatory detention. 
Razo v. State, 577 S.W.2d 709, 711 (Tex. Crim. App. [Panel Op.]
1979).  Trooper Lilly said that (1) he
thought it was odd that appellant, who was driving, did not know the last name
of the vehicle=s owner; (2) appellant and Van were not
consistent with regard to the number of trucks they planned to purchase or
about the specific plans for the day of the traffic stop; (3) he thought it was
implausible that someone would make a one-day trip from Florida to Houston to
purchase a truck (or trucks); (4) appellant exhibited an extreme level of
nervousness; (5) Van made no eye contract at all with him; and (6) Van said he
could not find his driver=s license even though Lilly saw him flip
past it while they were talking. 








It is not important that any of these
facts when viewed alone may appear purely innocent or may not rise to the level
of reasonable suspicion.  See Teleshow
v. State, 964 S.W.2d 303, 306 (Tex. App.CHouston [14th Dist.] 1998, no pet.) (stating that Athere may be
instances when a person=s conduct, viewed in a vacuum, appears
purely innocent, yet when viewed in the light of the totality of the circumstances,
those actions give rise to reasonable suspicion@).  Additionally, we note that, although
reasonable suspicion must be based on articulable facts rather than an
unparticularized hunch, the level of suspicion required for a detention Ais obviously less
demanding than that for probable cause@ and probable
cause only requires A>a fair probability
that contraband or evidence of a crime will be found.=@  United States v. Sokolow, 490 U.S. 1,
7 (1989) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)) (AThe Fourth
Amendment requires >some minimal level of objective
justification= [for a detention] considerably less than
proof of wrongdoing by a preponderance of the evidence.@) (quoting INS
v. Delgado, 466 U.S. 210, 217 (1984)). 

Based on our review of the totality of the
circumstances, in light of the trooper=s experience and
knowledge, we find Trooper Lilly corroborated enough facts to justify detention
of appellant until the canine unit arrived at the scene.  We overrule appellant=s sole point of
error, and affirm the trial court=s judgment.

 

 

 

 

/s/      Leslie Brock Yates

Justice

 

Judgment
rendered and Opinion filed April 15, 2004.

Panel
consists of Justices Yates, Hudson, and Fowler.

Publish
C Tex. R. App. P. 47.2(b).

 











[1]  Trooper Lilly testified the
videotape accurately reflects the traffic stop, but noted that, because of the
videotape=s poor quality, it does not
completely capture the level of appellant=s nervousness, such as the shaking of appellant=s hands. 





[2]  Appellant relies on United
States v. Dortch, 199 F.3d 193 (1999), and Davis v. State, 947
S.W.2d 240 (Tex. Crim. App. 1997).  The
cases are distinguishable because in both cases the officers indicated to the
defendants that they were free to leave the scene, but that their vehicles were
being detained.  Dortch, 199 F.3d
at 196; Davis, 947 S.W.2d at 241. 
The courts in both cases found the instruction to each defendant that he
could leave seriously undercut a finding of reasonable suspicion.  Dortch, 199 F.3d at 199 (stating that,
because the defendant remained at scene after he was told he could leave, the
police could not rely on their assertion that the defendant appeared Aas if he was looking for a place to
run@); Davis, 947 S.W.2d at 241
(AIndeed, when viewed in an objective
fashion, no known fact, or rational inferences from those facts, would support
the conclusion that appellant was engaged in or soon would engage in criminal
activity.  The officers obviously made
the same determination because they informed appellant that he was free to
leave.@) (citations omitted).