Affirmed and Opinion filed June 22, 2004









Affirmed and Opinion filed June 22, 2004.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00119-CR

____________

 

WILLIAM LEBLANC, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 12th
District Court

Grimes County, Texas

Trial Court Cause No. 14,732

 



 

O P I N I O N

Following the trial court=s denial of his
pre-trial motion to suppress evidence, 
appellant William LeBlanc pleaded guilty to the offense of possession
with intent to deliver more than four but less than 200 grams of
methamphetamine.  The trial court
assessed punishment at eight years= confinement in
the Texas Department of Criminal Justice, Institutional Division.  In two points of error, appellant claims the
trial court erred in denying his motion to suppress.  We affirm.








On the evening of October 11, 2001, Ryan
Schroeder and Todd Helms, deputy sheriffs with the Grimes County Sheriff=s Department,
stopped a truck on Highway 6 in Grimes County for defective taillights and for
not having a license plate or license plate lights.  The vehicle had three occupants.  Appellant was the driver of the vehicle.  Tracy Hayes and Sonya Amason were the
passengers.  Based on appellant=s extreme level of
nervousness, his failure to make eye contact while speaking with the deputies,
his failure to present proof of insurance, his inconsistent explanation when
questioned about the purpose of his trip, and his implausible route, in
addition to the fact that his passengers had no form of identification, Deputy
Helms asked for consent to search the vehicle. 
Appellant initially consented to a partial search of the truck, but
later withdrew his consent.  Deputy Helms
retrieved his narcotics dog from the patrol car and had the dog perform an
open-air sniff of appellant=s vehicle.  After the dog alerted on appellant=s truck, appellant
told the deputies he had a marijuana cigarette in the vehicle.  Deputy Helms searched the interior of the
vehicle and found a small portion of a marijuana cigarette and several driver=s licenses with
appellant=s picture on them, but with different names
and dates of birth.  In the bed of the
truck, Helms found three round balls and hypodermic needles.  The three round balls tested positive for
methamphetamine. 








In this appeal, appellant challenges
whether the deputies had probable cause or reasonable suspicion to continue to
detain appellant after the original purpose of the traffic stop had
expired.  Once the investigation of the
conduct that initiated the traffic stop was concluded, continued detention of
appellant was permitted only if there was reasonable suspicion to do so.  Woods v. State, 956 S.W.2d 33, 35, 38
(Tex. Crim. App. 1997).  To demonstrate
reasonable suspicion, the State had to present to the trial court specific
articulable facts, which, when combined with rational inferences from those
facts, led Deputies Helms and Schroeder to reasonably suspect in light of their
experience and knowledge that appellant had engaged, was engaging, or was soon
to engage in criminal activity.  Id.  This standard is an objective one.  Garcia v. State, 827 S.W.2d 937, 943B44 (Tex. Crim.
App. 1992).  There need only be an
objective basis for the detentionCthe subjective
intent of the deputies conducting the detention is irrelevant.  Id. 
The reasonable suspicion determination is made by considering the
totality of the circumstances.  Garcia
v. State, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001).  

In making this
totality-of-the-circumstances determination, we use a bifurcated standard of
review.  We give almost total deference
to the trial court=s determination of historical facts
supported by the record and the application of law to fact questions that turn
on credibility and demeanor; however, we review de novo application of law to
fact questions that do not turn upon credibility and demeanor.  Carmouche v. State, 10 S.W.3d 323, 327
(Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).  Accordingly, we view the
evidence and all reasonable inferences therefrom in the light most favorable to
the trial court=s ruling, and sustain the ruling if it is
sufficiently supported by the evidence and is correct on any theory of law
applicable to the case.  Villarreal v.
State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996).  








In his first point of error, appellant
claims the trial court erred in denying his motion to suppress because the
State failed to show the officers had probable cause to detain him after the
conclusion of the initial traffic stop.[1]  Appellant acknowledges the Court of Criminal
Appeals determined in Davis v. State that the State need only show
reasonable suspicion to support a detention. 
See 947 S.W.2d 240, 242 (Tex. Crim. App. 1997) (adopting the
standard established by the United States Supreme Court in Terry v. Ohio,
392 U.S. 1 (1968)).  Nonetheless,
appellant asks this court to reconsider the Court of Criminal Appeals= holding in Davis
because the standard it adopted was Amisplaced.@  We decline to reconsider the Davis
opinion.  See Rodriguez v. State,
47 S.W.3d 86, 94B95 (Tex. App.CHouston [14th Dist.] 2001, pet. ref=d) (stating that
as an intermediate appellate court, we are bound to follow the law as declared
by the state=s highest courts and noting that, because
the Court of Criminal Appeals is the highest court on matters of criminal law,
when it has deliberately and unequivocally interpreted the law in a criminal
matter, we must adhere to its interpretation). 
Accordingly, we overrule appellant=s first point of
error.

In his second point of error, appellant
contends the trial court erred in denying his motion to suppress because the
State failed to show reasonable suspicion existed to continue to detain
appellant beyond the effectuation of the purpose of the initial traffic
stop.  We disagree.

At the hearing on the motion to suppress,
the State introduced the testimony of Deputy Schroeder and Deputy Helms.  After the stop, appellant stepped out of his
vehicle, leaned and reached back into his vehicle, and then stepped toward the
back of the vehicle.  Deputy Helms said
these acts concerned him.  Helms placed
his hand on his service weapon, and appellant was asked to step to the back of
the vehicle and show the officers his hands. 
Deputy Schroeder asked for appellant=s driver=s license and
proof of insurance.  Appellant quickly
said that he would go ahead and receive a citation for no insurance.  Appellant provided an older-style license, which
had been discontinued in Texas. 
Appellant=s driver=s license was
checked for outstanding warrants.  Both
deputies testified that appellant was noticeably shaking and sweating.  Schroeder indicated that appellant seemed in
a hurry, and the level of nervousness being exhibited was beyond the typical
amount of nervousness exhibited by a person stopped for a traffic violation.  








Deputy Helms spoke with appellant and
asked him where he was headed to and where he was coming from that night.  Appellant began sweating more and said he was
in the process of moving from Houston to Fort Worth.[2]  Given appellant=s location, Helms
thought that the route was unusual and that appellant might be providing a
false destination.  Helms also noticed
that appellant=s driver=s license had a
Fort Worth address and the bed of the pickup truck was only half full,
inconsistent with appellant=s story.  Further, some items in the back of the truck
were covered with a tarp.  Helms observed
that appellant was very fidgetyChe untucked his
shirt and began pulling on its hem and avoided eye contact with the
deputies.  Appellant was pacing and
unable to stay in one spot.

Deputy Helms also spoke with the
passengers.  One of the passengers
appeared to be asleep, and Aawoke@ only when
prompted for identification.  The
passengers did not have any form of identification, but provided their names
and dates of birth so the officers could check them for warrants.  Helms thought it was odd for an adult to
sleep through a traffic stop.  Further,
no driver=s license was found under the two names
provided by the passengers.  Helms said
it is common knowledge in law enforcement that such a return often means an
individual is giving a false name or date of birth.  Deputy Helms noticed the floorboard of the
vehicle contained numerous fast-food wrappers. 
Helms said that he was taught in his drug interdiction training that
fast-food wrappers can be an indicator of possible narcotics trafficking
because traffickers stop only long enough to pick up fast food and continue on
their way.  

Deputy Schroeder then gave appellant a
citation.  While Schroeder was completing
the citation, Deputy Helms asked appellant if he had any illegal weapons or
narcotics.  Helms named different
narcotics.  Appellant remained silent
when asked about certain drugs, but when asked about methamphetamines,
appellant became upset and loudly said, ANo.@  At this point, appellant was asked for
consent to search the vehicle.  After
appellant ultimately refused to consent, Deputy Helms decided to have his
narcotics dog sniff  around the exterior
of the vehicle.[3]













Appellant argues that, because the facts
listed above are weak indicators of criminal behavior, the deputies did not
have sufficient reasonable suspicion that appellant was engaging or was soon to
engage in criminal activity.[4]  However, officers are entitled to rely on all
of the information obtained during the course of their contact with a suspect
in developing articulable facts that would justify a continued investigatory
detention.  Razo v. State, 577
S.W.2d 709, 711 (Tex. Crim. App. [Panel Op.] 1979).  The deputies said that (1) appellant exhibited
furtive movements upon exiting his vehicle;[5]
(2) appellant quickly said he would take a ticket for no insurance; (3)
appellant presented an older style driver=s license, which
had been discontinued by Texas; (4) the floorboard of appellant=s vehicle
contained numerous fast-food wrappers; (5) appellant had a tarp covering some
items in the back of the truck; (6) appellant was shaking, sweating, and exhibiting
an extreme level of nervousness, including the avoidance of eye contact with
the deputies;[6]
(7) appellant=s story was inconsistent with his actions
or information discovered during the traffic stop, such as the Fort Worth
address and the half-empty truck; and (8) neither one of appellant=s passengers had
any form of identification and the information provided by them indicated that
neither had a driver=s license. 
It is not important that any of these facts when viewed alone may appear
purely innocent or may not rise to the level of reasonable suspicion.  See Teleshow v. State, 964 S.W.2d 303,
306 (Tex. App.CHouston [14th Dist.] 1998, no pet.)
(stating that Athere may be instances when a person=s conduct, viewed
in a vacuum, appears purely innocent, yet when viewed in the light of the
totality of the circumstances, those actions give rise to reasonable suspicion@).  Additionally, we note that, although
reasonable suspicion must be based on articulable facts rather than an
unparticularized hunch, the level of suspicion required for a detention Ais obviously less
demanding than that for probable cause,@ and probable
cause only requires A>a fair probability
that contraband or evidence of a crime will be found.=@  United States v. Sokolow, 490 U.S. 1,
7 (1989) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)) (AThe Fourth
Amendment requires >some minimal level of objective
justification= [for a detention] considerably less than
proof of wrongdoing by a preponderance of the evidence.@) (quoting INS
v. Delgado, 466 U.S. 210, 217 (1984)). 

Based on our review of the totality of the
circumstances, in light of the officers= experience and
knowledge, we find Deputies Schroeder and Helms had sufficient reasonable
suspicion to justify the short detention of appellant from the time the
citation was issued until Deputy Helms retrieved his canine from the patrol car
at the scene.  See Smith v. State,
945 S.W.2d 343, 346 (Tex.
App.CHouston [1st Dist.] 1997, pet. ref=d) (officers must
diligently pursue a means of investigation that minimizes the time and scope of
the intrusion on the individual).  We
overrule appellant=s second point of error.

Having overruled all of appellant=s points of error,
we affirm the trial court=s judgment.

 

 

 

 

/s/      Leslie Brock Yates

Justice

 

 

Judgment
rendered and Opinion filed June 22, 2004.

Panel
consists of Justices Yates, Anderson, and Hudson.

Publish
C Tex. R. App. P. 47.2(b).











[1]  Appellant does
not appear to contest the warrantless search based on the alert by the
canine.  See United States v. Zucco,
71 F.3d 188, 191B92 (5th Cir. 1995) (holding that once a canine alerts
to a vehicle, there is probable cause to search it).  Rather, appellant argues the deputies had no
right to detain him after the citation was issued in order to retrieve the
canine and perform the open-air sniff of his truck. 





[2]  Appellant
points out that Deputy Helms=s testimony differs from Deputy Schroeder=s with regard to appellant=s destination. 





[3]  Appellant attacks the credibility
of the witnesses by noting inconsistences in the accounts given by the deputies
concerning the precise time of the stop, which side of the vehicle Schroeder
approached at the beginning of the stop, who ran the NCIC and TCIC checks on
the passengers, whether Helms advised Schroeder that he believed there may be
narcotics in the vehicle prior to the dog alerting on the vehicle, and whether
Helms spoke with appellant or the passengers first. However, as noted above, we must afford almost total deference to the trial
court=s determination of the historical
facts that are supported by the record, especially
when the trial court=s findings are based on an evaluation
of credibility and demeanor. Guzman, 955 S.W. 2d at 89. 





[4]  Appellant primarily relies on Davis
v. State and McQuarters v. State, 58 S.W.3d 250 (Tex. App.CFort
Worth 2001, no
pet.).  The cases are distinguishable.  In Davis, the officer told the
defendant that he was free to leave the scene, but that his vehicle was being
detained.  947 S.W.2d at 241.  The court found the instruction seriously
undercut a finding of reasonable suspicion. 
Davis, 947 S.W.2d at 241 (AIndeed, when viewed in an objective fashion, no known fact,
or rational inferences from those facts, would support the conclusion that
appellant was engaged in or soon would engage in criminal activity.  The officers obviously made the same
determination because they informed appellant that he was free to leave.@) (citations omitted).  Similarly in McQuarters,
the officer suspected the defendant of being possibly intoxicated or falling
asleep at the wheel, questioned him, quickly concluded that he was not
intoxicated, and informed the defendant that he was going to write him a
warning and then let him go.  58 S.W.3d
at 253B54.  The court
distinguished the facts of its case by noting that the Adetentions in [the cases cited by the State] were
reasonable because the officer [in each case] was in the midst of conducting
the investigation for the initial traffic stop@ when he
developed reasonable suspicion.  Id.
at 257.





[5]  Furtive
movement during a police stop has been found to be a factor giving rise to
reasonable suspicion.  Valencia v.
State, 820 S.W.2d 397, 400 (Tex. App.CHouston
[14th Dist.] 1991, pet ref=d).





[6]  Although
nervousness alone is not sufficient, it has been found to be a factor giving
rise to reasonable suspicion.  Simpson
v. State, 29 S.W.3d 324, 329 (Tex. App.CHouston
[14th Dist.] 2000, pet. ref=d).