# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00128-CR

**Barbara Galindo, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF LLANO COUNTY, 33RD JUDICIAL DISTRICT
### NO. CR7274, HONORABLE J. ALLAN GARRETT, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Barbara Galindo of possession of a controlled substance (methamphetamine), more than 4 grams but less than 200 grams, and of tampering with evidence. *See* Tex. Health & Safety Code §§ 481.115(a), (d), 481.102(6); Tex. Penal Code § 37.09(a)(1), (c). She received sentences of 25 years' imprisonment for each offense, enhanced by two prior felony convictions set forth in her indictment to which she pleaded true. *See* Tex. Penal Code § 12.42(d).

In three issues, Galindo contends that the district court erred by: (1) allowing a law-enforcement officer to testify that he "knew that she was subject to an ongoing narcotics investigation"; (2) overruling her objection to closing argument that, in her view, implied she was a methamphetamine distributor and manufacturer; and (3) providing a supplemental instruction to the jury to find the two prior felony conviction allegations true. We will affirm the judgments of conviction.

# BACKGROUND[1]

The events leading to Galindo's convictions began with a nighttime traffic stop. Deputy Rhett Rollins of the Llano County Police Department testified that Galindo was driving in the vehicle directly in front of his patrol car when he saw her make an illegal turn into a convenience store. When Deputy Rollins made contact with Galindo, she appeared very nervous, she was sweating and her face was trembling, and she declined his request to search the car. Deputy Rollins testified that he recognized Galindo from a prior traffic stop and that he knew she "was subject to an ongoing narcotics investigation."

Another officer arrived at the scene with a drug-detection dog that conducted an open-air sniff. The dog alerted on the car, and Deputy Rollins told Galindo that the officers would search the car. As the search was concluding, Galindo stated that inside her purse she had digital scales that she found at a laundromat. The scales, which looked like a pack of cigarettes, had an off-white, crystalline residue that Deputy Rollins believed from his training to be methamphetamine. He arrested Galindo for possession of drug paraphernalia.

Before placing her in his patrol car, and while in the presence of the other officer, Deputy Rollins lifted the back seat of his car to show Galindo that there was nothing beneath the seat. Deputy Rollins suspected Galindo might have narcotics on her person, but she was not searched then because no female deputies were on-duty nearby. Galindo remained unattended but handcuffed in the back seat of the patrol car for fifteen to twenty minutes before Deputy Rollins drove her to jail. Once at the jail, Deputy Rollins got Galindo out of the patrol car and lifted the

---

[1] The facts are summarized from the testimony and exhibits admitted into evidence at trial.

2

back seat, where he found two plastic baggies containing an off-white, crystalline substance that was suspected to be methamphetamine. A grand jury indicted Galindo for possession of methamphetamine and for tampering with evidence because of her attempt to conceal it.

At trial, photographs of the baggies found under the seat of the patrol car were admitted into evidence. A forensic scientist testified that the substance inside one of the baggies was 6.43 grams of methamphetamine. Defense counsel contended that Galindo was harassed by police, who "had systematically, chronologically, and intentionally pulled her over multiple times" and "every time she would go into that gas station, the police would pull up and search her because they thought she was a no-good person." Defense counsel reiterated that argument during closing, stating that Galindo was "always harassed by the police." Defense counsel further argued during closing that Galindo was not a "meth person" because "meth people aren't healthy" and "[t]hey look unhealthy."

The jury convicted Galindo on both counts charged in her indictment. During the punishment phase, Galindo pleaded true to both enhancement paragraphs and testified that she was convicted of the offenses in the enhancement paragraphs. While the jury was deliberating her punishment, the presiding juror sent a note to the court stating, "Assuming that we agree that the two priors are true, do we have the ability to still sentence for less than 25 years?" The court responded, "You are instructed to find the allegations to be true. You must follow the 'Instructions of the Court on Punishment' in assessing your verdict." Ultimately, the jury assessed Galindo's punishment at twenty-five years' imprisonment for each offense. The court rendered judgments of conviction in

3

accordance with the jury's verdicts and determined that the two sentences would run concurrently. Galindo filed a motion for new trial that was overruled by operation of law. This appeal followed.

## DISCUSSION

### Admissibility of extraneous-offense testimony

In her first issue, Galindo contends that the district court erred by allowing a law-enforcement officer to testify that he "knew that she was subject to an ongoing narcotics investigation." Galindo contends that this testimony was extraneous-offense evidence and that the State did not provide pretrial notice of its intent to introduce it. Extraneous-offense evidence, while inadmissible generally, is admissible under Texas Rule of Evidence 404(b) for purposes such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Tex. R. Evid. 404(b). Rule 404(b) requires a prosecutor, upon a defendant's timely request, to provide pretrial notice of intent to introduce extraneous-offense evidence in its case-in-chief. *Id*.

However, defensive theories presented during a defendant's opening statement may open the door to admission of extraneous-offense evidence as rebuttal evidence during the State's case-in-chief. *Dabney v. State*, 492 S.W.3d 309, 318 (Tex. Crim. App. 2016); *Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008). We review a trial court's ruling on the admissibility of 404(b) evidence under an abuse-of-discretion standard. *Dabney*, 492 S.W.3d at 318. The trial court does not abuse its discretion unless its determination lies outside the zone of reasonable disagreement. *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018); *see Dabney*, 492 S.W.3d at 318.

4

Here, during his direct examination by the prosecutor, Deputy Rollins testified that he knew Galindo "was subject to an ongoing narcotics investigation." This followed the prosecutor's other questions to Deputy Rollins during his direct examination about how Deputy Rollins recognized Galindo, why he suspected that she had narcotics on her person, and what else he knew about her. But the prosecutor elicited that testimony only after Galindo's counsel told the jury in opening statement that police "had systematically, chronologically, and intentionally pulled [Galindo] over multiple times" and "every time she would go into that gas station, the police would pull up and search her because they thought she was a no-good person." The district court could have determined, within the zone of reasonable disagreement, that defense counsel's argument suggesting police had stopped Galindo multiple times for no good reason opened the door to extraneous-offense evidence rebutting that defensive theory. The court could have also reasonably determined that Deputy Rollins's testimony was admissible to rebut Galindo's argument that her interaction with police was merely harassment of someone they thought "was a no-good person." Thus, we conclude that the district court did not abuse its discretion in admitting the testimony without pretrial notice. *See Dabney*, 492 S.W.3d at 318 (holding that defensive theory raised in voir dire and opening statement "opened the door" to extraneous-offense evidence and that State was not required by Rule 404(b) to provide notice of such rebuttal evidence); *Bass*, 270 S.W.3d at 563 (concluding that extraneous-offense evidence was admissible to rebut defensive theory that allegations against defendant were fabricated). We overrule Galindo's first issue.

**Propriety of closing argument**

In her second issue, Galindo contends that the district court erred by overruling her objection to the State's closing argument that, in her view, implied she was a methamphetamine

5

distributor and manufacturer.  We review a trial court's ruling on an objection to jury argument under an abuse-of-discretion standard.  *Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004); *Lemon v. State*, 298 S.W.3d 705, 707 (Tex. App.—San Antonio 2009, pet. ref'd); *see Roberts v. State*, No. 03-14-00637-CR, 2016 Tex. App. LEXIS 11557, at *32 (Tex. App.—Austin Oct. 26, 2016, pet. ref'd) (mem. op., not designated for publication).

The Court of Criminal Appeals has recognized four proper areas of jury argument: (1) summation of the evidence presented at trial; (2) reasonable deductions drawn from that evidence; (3) answers to opposing counsel's argument; and (4) pleas for law enforcement.  *Jackson v. State*, 17 S.W.3d 664, 673 (Tex. Crim. App. 2000).  Argument that exceeds the permissible bounds of these approved areas "will not constitute reversible error unless, in light of the record as a whole, the argument is extreme or manifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceeding."  *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000).  When examining challenges to jury argument, we consider the remark in the context in which it appears.  *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988); *Roberts*, 2016 Tex. App. LEXIS 11557, at *32.

During closing argument in the guilt-innocence phase of trial, the prosecutor noted that this case involved "a lot" of methamphetamine and responded to defense counsel's prior assertion that Galindo was not a "meth person" because "meth people aren't healthy" and "look unhealthy":

| [Prosecutor]: | This is a lot of methamphetamine.  It is much easier to prove possession of an illegal narcotic like methamphetamine, than distribution.  But ladies and gentlemen, take a look at the |

evidence, and we know what is going on in this case. And it is a horrible drug that I hate and I hope you do too. . . This thing is nothing but like industrial chemicals mixed together that happen to have a horribly hyping-up effect on people, and it destroys their lives and it destroys their health. And what is absolutely atrocious is if what [defense counsel] said is right. If that's not a methamphetamine user, and she is carrying this around, lots and lots of it, then what we know is this: The only way somebody ever tries methamphetamine for the first time—

[Defense counsel]: Objection, Judge. This is a possession case. This is getting into manufacture and distribution which there's no allegation of.

[Prosecutor]: Plea for law enforcement, Your Honor.

The Court: Overruled.

After closing argument resumed, the court clarified that the prosecutor's argument was directed to Galindo's methamphetamine possession, and the prosecutor referenced a need to pursue prosecutions for drug offenses:

[Prosecutor]: The only way somebody ever tries methamphetamine for the first time, ever, is if they bought it from someone, who got it from someone, who got it from someone, who got it from someone, who got it from the manufacturer.

[Defense counsel]: Judge, objection. Inciting the jury. This has nothing to do with this case. It's inappropriate and inciting.

The Court: Overruled. Continue.

. . . .

[Prosecutor]: And to be involved in its trade with everybody logically knowing that the first time somebody tries it, it came from some distribution method.

7

| [Defense counsel]: | Judge, objection. This is a possession case. This is over constant, constant—it's an attempt to incite this jury inappropriately. |
|---|---|
| The Court: | You're arguing that she was in possession of it? |
| [Prosecutor]: | I am, Your Honor. |
| The Court: | All right. Overruled. Continue. |
| [Prosecutor]: | So this is not some little marijuana case. This is not some argument for, well, personal use. This is a horrible drug that needs to be eradicated, and people need to be prosecuted severely for it. It is destroying Llano County. It puts young people at risk. It puts your families at risk. It puts our community at risk. |

The district court could have reasonably determined that the prosecutor's remarks, considered in context, were an answer to defense counsel's argument that Galindo did not have the appearance of a "meth person." *See Jackson*, 17 S.W.3d at 673; *Gaddis*, 753 S.W.2d at 398. If, as defense counsel argued, the amount of methamphetamine Galindo possessed was not for her personal use, a responsive argument is that it was intended for another purpose.

Additionally, counsel is allowed wide latitude in drawing inferences from the evidence so long as the inferences drawn are reasonable, fair, legitimate, and offered in good faith. *Shannon v. State*, 942 S.W.2d 591, 597 (Tex. Crim. App. 1996). Here, the district court could have reasonably determined that the prosecutor's remarks were reasonable deductions from the evidence, given the amount of methamphetamine involved and the digital scales used in distribution. *See id.*; *see also Jackson*, 17 S.W.3d at 673; *Doby v. State*, 363 S.W.2d 286, 288 (Tex. Crim. App. 1963) (concluding, in appeal from conviction for heroin possession, that no error was shown in State's jury

argument that only reason defendant could have for possession of heroin would be for purpose of its sale or use); *Soto v. State*, 810 S.W.2d 861, 864 (Tex. App.—Fort Worth 1991, pet. ref'd) (concluding that even if prosecutor indirectly argued that defendant was drug dealer, that argument was reasonable inference from record given drug-manufacturing paraphernalia and weapons found in defendant's car); *Layne v. State*, 752 S.W.2d 690, 694–95 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd) (concluding that even if defendant who was charged only with possession of marihuana and who was not shown to be drug dealer had preserved his complaints about prosecutor's arguments referring to "narcotics," "drug dealing," and "where the product that [defendant] had in his possession would end up," such arguments were within scope of reasonable deductions from evidence).

Further, any misunderstanding about the offense to which the prosecutor referred was resolved when he confirmed to the court, in the presence of the jury, that he was arguing about Galindo's methamphetamine possession. Accordingly, we conclude that the district court did not abuse its discretion by overruling Galindo's objection to the prosecutor's closing argument. We overrule Galindo's second issue.

**Propriety of court's supplemental instruction to jury about prior felony convictions**

In her third and final issue, Galindo contends that the district court erred by providing a supplemental instruction to the jury—in response to their question about the effect of her two prior felony convictions—to find the enhancement allegations true. We review a claim of jury-charge error by determining first whether error exists, then evaluating the harm caused by any error. *Arteaga v. State*, 521 S.W.3d 329, 333 (Tex. Crim. App. 2017). When a defendant timely objects

9

to the charge at trial, reversal is required if the reviewing court finds "some harm" to the defendant. *Mendez v. State*, 545 S.W.3d 548, 552 (Tex. Crim. App. 2018).

During punishment deliberations, the presiding juror sent a note to the court stating, "Assuming that we agree that the two priors are true, do we have the ability to still sentence for less than 25 years?" The court responded, "You are instructed to find the allegations to be true. You must follow the 'Instructions of the Court on Punishment' in assessing your verdict."[2] The record reflects that this supplemental instruction tracked the instruction that was already in the punishment charge and submitted without objection: "The defendant has pleaded that these accusations are true. You are therefore instructed to find the allegations to be true."

Nevertheless, Galindo objected to the supplemental instruction as "a comment on the weight beyond the Court's—what the Court should do as far as giving any instruction to the jury." She requested that the court instead respond, "You have already received instructions from this Court. Please follow the instructions of the charge." The court denied that request and overruled her objection to the supplemental instruction. Galindo contends that her counsel urged nullification in his closing argument and that the court's supplemental instruction to the jury to find the allegations true was a limitation on the jury's discretion concerning fact issues defined in the charge. She notes that the verdict forms on punishment included options for finding that one prior-conviction allegation was true and for finding that no prior-conviction allegation was true.

---

[2] The jury sent a second note asking, "If the jury comes back with a sentence of less than 25 years, will we be in contempt of the court?" The court declined to respond to this question and instead checked a box on the jury-communication form indicating, "The court under the law is not permitted to answer the question that you have presented. Please refer to and follow the instructions already given you, and continue your deliberations."

10

"'[T]o establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt that (1) a prior conviction exists, and (2) the defendant is linked to that conviction.'" *Henry v. State*, 509 S.W.3d 915, 918 (Tex. Crim. App. 2016) (quoting *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007)). But if a defendant pleads true to an enhancement paragraph, the State is relieved of its evidentiary burden to prove the enhancement allegations, unless the record "affirmatively reflects" that the enhancements were improper. *Hopkins v. State*, 487 S.W.3d 583, 586 (Tex. Crim. App. 2016); *see Henry*, 509 S.W.3d at 918 (noting that defendant may be linked to prior convictions through his own admission).

Here, Galindo pleaded true to the enhancement allegations in her indictment.[3] Additionally, pen packets showing her prior convictions were admitted into evidence without objection, and Galindo testified about the circumstances of her prior convictions. Nothing in the record affirmatively reflects that the enhancements were improper. Thus, the State was relieved of its evidentiary burden to prove the enhancement allegations. *See Hopkins*, 487 S.W.3d at 586; *see also Henry*, 509 S.W.3d at 918.

As the State points out, if Galindo had pleaded not true to the enhancement allegations, the jury could have performed an act of jury nullification by ignoring all of the evidence and finding that none of the enhancement allegations were true. But given Galindo's plea of true to the prior-conviction allegations, the district court did not err by informing the jury that it was to find those prior-conviction allegations to be true, irrespective of whether the jury was willing to find one or both allegations not true so that it might assess a punishment of less than twenty-five years.

---

[3] Defense counsel acknowledged as much, stating, "She already pled true to these, Judge."

11

*See, e.g.*, *Segovia v. State*, 467 S.W.3d 545, 559 (Tex. App.—San Antonio 2015, pet. ref'd) (noting that trial court's instruction to jury stating "you will find" enhancement allegations to be true would have been proper if defendant had entered plea of true); *Lewis v. State*, 814 S.W.2d 513, 516 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd) (concluding that trial court erred by informing jury that court had found both enhancement paragraphs in defendant's indictment to have been established as true "as a matter of law" despite defendant's plea of not true to both enhancement paragraphs).

On this record, we conclude that Galindo has not shown that the district court erred in its supplemental instructions on the punishment charge to the jury, and thus, we need not conduct a harm analysis. *See Arteaga*, 521 S.W.3d at 333. We overrule Galindo's third issue.

## CONCLUSION

We affirm the district court's judgments of conviction.

_____
Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Goodwin and Kelly

Affirmed

Filed: February 12, 2019

Do Not Publish